COMMONWEALTH vs. STEPHEN BRZEZINSKI.

Bristol. March 6, 1989. — July 13, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Indictment, Dismissal, Grand jury proceedings, Disclosure of identity of informer. *Grand Jury. Constitutional Law,* Evidence obtained by private party, Probable cause, Search and seizure. *Evidence,* Judicial discretion. *Probable Cause. Search and Seizure,* Affidavit, Probable cause. *Controlled Substances.*

Sufficient evidence was presented to warrant a grand jury in indicting a criminal defendant for trafficking in cocaine. [402-403]

In a criminal case, the judge's finding, on the defendant's motion to suppress evidence, that the informant who provided information leading to the issuance of a search warrant for the defendant's apartment did not improperly act as an agent of the police in entering the defendant's apartment and making observations, was supported by the record. [405-406]

A criminal defendant, granted a request for a hearing under *Franks* v. *Delaware,* 438 U.S. 154 (1978), who did not inquire into the affiant's state of mind with respect to an incorrect statement in an application for a search warrant and who did not ask the motion judge to make a finding on that issue, was not entitled to a remand for another *Franks* hearing to pursue that line of questioning. [406-408]

In a criminal case, the Commonwealth's interest in maintaining the confidentiality of an informant, who acted as a "tipster" providing information leading to the issuance of a search warrant, was shown to outweigh the defendant's interest in the disclosure of the informant's identity. [408]

The record of criminal proceedings disclosed no appellate issue with respect to the inventory attached to the return of a search warrant. [408-409]

The evidence presented at the trial of an indictment for trafficking in cocaine was sufficient to establish the defendant's possession and control of the controlled substances found in his apartment. [409-410]

INDICTMENT found and returned in the Superior Court Department on December 4, 1984.

Pretrial motions to dismiss and to suppress evidence were heard by *John D. Sheehan,* J., and the case was heard by *Robert S. Prince,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Anthony M. Traini* for the defendant.

*Dana A. Curhan,* Assistant District Attorney, for the Commonwealth.

Liacos, C.J. The defendant was convicted in a jury-waived trial of trafficking in cocaine in violation of G. L. c. 94C, § 32E (*b*) (1) (1986 ed.). The Appeals Court (in an unpublished memorandum and order under Appeals Court Rule 1:28) affirmed the conviction. 26 Mass. App. Ct. 1104 (1988). We granted the defendant's application for further appellate review. The defendant claims that the trial judge and motion judge erred in numerous respects. We affirm the conviction.

We shall make reference to the relevant facts in the appropriate sections of the opinion.

1. The motion judge did not err in denying the defendant's motion to dismiss the indictment charging trafficking in cocaine under G. L. c. 94C, § 32E (*b*) (1).[1] "Our review of the propriety of any indictment is limited to determining whether the grand jury received sufficient evidence to find probable cause for arrest." *Commonwealth* v. *McGahee,* 393 Mass. 743, 746-747 (1985). *Commonwealth* v. *O'Dell,* 392 Mass. 445, 450-451 (1984). In order to meet this standard, the grand jury must be presented with "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed . . . an offense[.]" *Commonwealth* v. *DeCologero,* 19 Mass. App. Ct. 956, 957 (1985), quoting *Commonwealth* v. *O'Dell, supra* at 450.

There was sufficient evidence to warrant the grand jury in indicting the defendant for trafficking in cocaine. The arresting officer, Detective Frederick Borges, testified before the grand jury that, on entering the defendant's apartment, pursuant to a search warrant, he observed five people including the defend-

---

[1] General Laws c. 94C, § 32E (*b*), penalizes "[a]ny person who trafficks in cocaine or any salt thereof by knowingly or intentionally manufacturing, distributing, or dispensing or possessing with intent to manufacture, distribute, or dispense . . . a net weight of twenty-eight grams or more of cocaine or . . . any mixture containing cocaine or any salt thereof."

ant sitting around a coffee table on which lay two packets of a substance suspected to be cocaine. The defendant got up and ran to the back of the apartment, entered a closet, came out again, and had to be subdued. In the closet, the police officers found a triple beam scale with a large amount of a substance suspected to be cocaine. Behind a stereo amplifier in the hallway police found a plastic bag, approximately four inches wide and three inches long, about half-filled with a substance suspected to be cocaine. The police also found test tubes, used for testing the quality of cocaine, and tubes used for snorting cocaine. Borges testified that approximately fifty-two grams of cocaine were found in the apartment. Approximately $1,000 in cash was also found in the apartment. The police officers also found telephone and cable television bills addressed to the defendant at that address. In short, there was ample trustworthy information to warrant a reasonable person's conclusion that the defendant had committed the offense of trafficking in cocaine in violation of G. L. c. 94C, § 32E (b) (1).

2. The defendant asserts that the informant who provided information leading to the issuance of a search warrant improperly acted as an agent of the police.

According to an affidavit signed by Detective Borges, and dated November 1, 1984, the informant had entered the defendant's apartment and observed, among other things, the defendant breaking down and packaging cocaine.[2] The search warrant,

---

[2] The affidavit stated: "I am . . . a police officer in the City of New Bedford, Ma. Bristol County. . . . I have information, based upon . . . [s]tatements made to myself by an informant who has proven to be relieable [sic] in the past by supplying informantion [sic] in the past which has led to the arrest and convictions of persons for narcotic drug violations. This informant stated to me that during the week Oct. 28, 1984 the informant was at 37 So. Sixth St. in the first floor apartment on the South side which is occupied by a Stephen Brzezinski and a Collette Cote. The informant further stated that while the informant was in the apartment he did watch while Stephen Brzezinski broke down large amounts of cocaine and packaged it into smaller amounts in clear plastic bags. The informant described the plastic bags as being the type that are used to package sandwiches with a self sealing top. The informant further stated that at that time the informant did observe fifteen to twenty of these clear plastic bags on the kitchen table and each one containg [sic] cocaine.

"The informant also stated that Stephen Brzezinski had shown the inform-

which was issued on November 1, and based upon this affidavit, was not executed.

On November 14, 1984, Borges signed an affidavit identical to the previous one except for the following additional paragraph: "On November 1, 1984, the undersigned did obtain a Search Warrant for 37 So. Sixth Street from the Third District Court. This warrant was not executed due to a change in the activities of Stephen Brzezinski and due to the informant not being able to satisfy [the undersigned] that the cocaine was still in the apartment. During the week of November 11, 1984, the informant did state that Stephen Brzezinski did get a new supply of cocaine and that the informant did see known cocaine dealers coming and going from the first floor South side apartment. The informant further stated that during the week of November 11, 1984, the informant was in Stephen Brzezinski's apartment and the informant did observe plastic bags which contained white substances in which Stephen Brzezinski told the informant that it was in fact cocaine."

After the hearing on the defendant's motion to exclude the cocaine and cocaine paraphernalia which were found during the search of the defendant's apartment, the motion judge found that "Detective Borges spoke with the informant sometime prior to November 14, 1984, concerning the activities of Stephen Brzezinski. They discussed the possibility of the informant going back into the apartment to get further information. . . . On the basis of information obtained during the informant's visit to Brzezinski's apartment sometime prior to November 14, 1984, and on the basis of the informant's statement that he saw known cocaine dealers coming and going from the apartment, Borges filed a new affidavit and obtained a search warrant on November 14, 1984."

---

ant a . . . ball of white substance about the size of a tennis ball and that Stephen Brzezinski stated to the informant 'this is rock and if you want to sell I will give you a quarter pound to get started.'

"The informant also stated that in the apartment were scales and white cellophane paper, razor blades and a mirror that Stephen Brzezinski used to package the cocaine."

The motion judge also found that the informant had not acted as an agent of the police: "In the case at bar, there is no evidence that Detective Borges initially recruited the informant and directed him/her to visit the Brzezinski residence. Apparently the informant initiated contact with Borges and gave him the information that formed the basis of the affidavit for the November 1, 1984, search warrant. The evidence also shows that subsequent to November 1, 1984, the informant told Borges that Brzezinski no longer had cocaine at his premises. Apparently there was a discussion at that time concerning the informant visiting Brzezinski's apartment in the near future and keeping Borges informed as to any changes regarding the presence of cocaine. There is no evidence that Borges directed the informant to return or that he initiated the discussion concerning a return visit. Since Borges did not participate in or direct the informant's actions, no constitutional analysis is triggered."

"An individual's actions will not be attributed to the State if no promises are made for that individual's help and if nothing was offered to or asked of that individual." *Commonwealth* v. *Rancourt*, 399 Mass. 269, 274 (1987). In *Rancourt*, we held that the motion judge did not err in concluding that no agency relationship had been established, despite the officer's having initially received information from an informant who was a fellow inmate of the defendant. The officer had told the informant "that if he obtained any other information and wanted to relay that information, he should telephone or write to the district attorney's office." *Id.* at 273. We can perceive no greater police involvement in this case than that which occurred in *Rancourt*.

The motion judge's finding that Detective Borges did not direct the informant to return to the apartment is supported by the record. "The . . . judge, not this court, has the function of determining the credibility of testimony." *Commonwealth* v. *Rancourt*, *supra* at 273 n.4. Further, there is testimony in the record that no consideration was offered or given to the informant. See *Commonwealth* v. *Rodwell*, 394 Mass. 694, 698 (1985).

In short, because the contact between Detective Borges and the informant did not reach the level of an agency relationship, the informant's entry into the defendant's apartment was not subject to constitutional limitations. See *Herbert* v. *State*, 10 Md. App. 279 (1970); *People* v. *Sellars*, 93 Ill. App. 3d 744 (1981).[3]

3. The defendant contends that the motion judge should have granted his motion to exclude items seized pursuant to the warrant because there was a material falsehood in the affidavit.

The affidavit stated that the anonymous informant "has proven to be relieable [*sic*] in the past by supplying informantion [*sic*] in the past which has led to the arrest and convictions of persons for narcotic drug violations." At a pretrial hearing,[4] Detective Borges was questioned by defense counsel about the information in the affidavit. At this time, Borges revealed that the informant had not provided information leading to any person's conviction. Defense counsel did not inquire into Borges's state of mind at the time he signed the affidavit. The defendant argued before the motion judge that, under *Franks* v. *Delaware*, 438 U.S. 154 (1978), the statement that there were convictions should be struck, and that therefore, under *Commonwealth* v. *Upton*, 394 Mass. 363 (1985), the affidavit failed to establish probable cause.

The motion judge refused to exclude the evidence, holding that the affidavit established probable cause. In his findings, the motion judge stated: "The statement contained in the affidavit that information from the informant in the past had led to arrest and conviction of persons for narcotic violations is not accurate. Detective Borges testified that, in fact, there had

---

[3] Because of our conclusion, we do not reach the question whether, even if the informant had acted as an agent of the police, his entry would have violated constitutional prohibitions of unreasonable searches and seizures. See *Commonwealth* v. *Blood*, 400 Mass. 61, 74 (1987). See also *United States* v. *White*, 401 U.S. 745, 749 (1971); *Lewis* v. *United States*, 385 U.S. 206, 211 (1966).

[4] The motion judge had granted the defendant's request for a hearing under *Franks* v. *Delaware*, 438 U.S. 154 (1978), because of a discrepancy between the description of the defendant in the affidavit and warrant and the defendant's actual appearance.

been arrests but no convictions." The motion judge held that the two-part "*Aguilar-Spinelli*" test, see *Commonwealth* v. *Upton, supra* — requiring a showing of the informant's "basis of knowledge" and of his or her veracity — was satisfied in this case. The judge held: "As to the second prong, the informant had given the police information which led to the arrest of several people. This is adequate support for a finding that the veracity prong of the two-part test has been met. That the affidavit incorrectly states this information led to both arrests and convictions is not fatal. However, this court is concerned with this imprecise procedure and strongly suggests that it be corrected in the future." The judge made no finding as to the affiant's state of mind at the time he signed the affidavit.

The defendant now contends that, in light of *Commonwealth* v. *Rojas*, 403 Mass. 483 (1988), which was decided after the defendant's conviction, the information in the affidavit, when considered without the reference to convictions, is insufficient to satisfy the veracity prong of the *Aguilar-Spinelli* test. *Rojas* held that, "[a] naked assertion that in the past the informant had provided information which led to a prior arrest is insufficient by itself to establish an informant's veracity." *Commonwealth* v. *Rojas, supra* at 486.

We agree that should the affidavit's reference to convictions be struck, the affidavit would fail to establish probable cause. But in order to strike any false statements from the affidavit, the defendant has the burden of showing by a preponderance of the evidence that the statement was made "knowingly and intentionally, or with reckless disregard for the truth." *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978). See *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 767, 769 (1981). A negligent misrepresentation by the affiant would not warrant a redaction of the false statement. See *Franks* v. *Delaware, supra* at 170; *Commonwealth* v. *Nine Hundred & Ninety-two Dollars, supra* at 771. See also *Commonwealth* v. *Honneus*, 390 Mass. 136, 142-143 (1983).

The motion judge below made no finding as to the state of mind of the affiant. Defense counsel, with the affiant before him at the hearing, failed to take advantage of the opportunity

to inquire into the affiant's state of mind. Further, the defendant did not request the motion judge to make a finding as to the affiant's state of mind. We agree with the motion judge that false statements of the sort we encounter here, whether negligent, reckless, or intentional, should be prevented in the future. We do not, however, feel that the defendant should be permitted to pursue this line of questioning at another *Franks* hearing when he had every opportunity to do so before he was convicted. See *Commonwealth* v. *Tabor*, 376 Mass. 811, 823 n.18 (1978).

4. We reject the defendant's contention that the motion judge should have compelled the disclosure of the informant's identity. "The government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth. . . . That privilege serves a substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity. The privilege, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant." (Citations omitted.) *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981). *Roviaro* v. *United States*, 353 U.S. 53 (1957).

The informant did not participate in the crime charged, and was not present during the execution of the search warrant or seizure of the cocaine and cocaine paraphernalia. *United States* v. *Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987). The informant in this case acted only as a "tipster." "It is well settled that the government is not required to disclose the identity of an informant who is a mere tipster and not an active participant in the offense charged." *United States* v. *Alonzo*, 571 F.2d 1384, 1387 (5th Cir.), cert. denied, 439 U.S. 847 (1978). See *United States* v. *Bourbon, supra*; *United States* v. *Skramstad*, 649 F.2d 1259, 1265 (8th Cir. 1981). On balance, we think the Commonwealth's interest in maintaining the confidentiality of the informant outweighed the defendant's interest in disclosure.

5. The defendant claims that the trial judge should have excluded certain items seized at the defendant's apartment but purportedly not listed in the return's inventory. The defendant

does not specifically identify these items but refers us generally to eight pages of the trial transcript. A fair reading of those pages and of the inventory reveals that every item objected to by the defendant does indeed appear in the inventory.[5] We thus do not address the question whether the failure to include an item in a return's inventory requires exclusion at trial. See *United States* v. *Dauphinee*, 538 F.2d 1 (1st Cir. 1976).

6. The defendant argues that the evidence presented at trial was insufficient to establish possession and control of the drugs found in his apartment. We conclude that, viewing the evidence in a light most favorable to the prosecution, *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 499 (1984), the trial judge was warranted in finding that the defendant was guilty of trafficking in cocaine.

"Possession implies 'control and power,' . . . exclusive or joint . . . , or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Rosa*, *supra* at 498, quoting *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). While presence in an area where contraband is found "alone cannot show the requisite knowl-

---

[5] The return listed: "(4) packages of testing tubes used to check purity of cocaine; (1) bag of marajuana [*sic*]; (34⅓) grams suspected cocaine; (1) triple beam scale; (1) power hitter used to smoke marajuana [*sic*]; (1) small container with a mirror and a razor blade; (1) small black plastic jar containing suspected cocaine; (2) glass tubes used to snort cocaine; (1) de-seeder used to separate marajuana [*sic*] and seed; (1) small plastic scale; (1) roach clip; assorted sifters; magazines with small squares cut out; assorted measuring spoons; numerous plastic bags with white residue suspected cocaine; 3 books explaining cocaine prepration [*sic*], and the effects of cocaine; numerous pieces of square papers cut from magazines; Stephen Brzezenski [*sic*] $778.00 in U.S. currency; James Amaral $73.00 in U.S. currency; Sergio Tome $60 in U.S. currency."

The defendant objected to the following items as allegedly not appearing in the return: a packet containing small glass "capillary tubes"; an unidentified amount of "insitol," a powder with which cocaine is "cut"; a cardboard tube containing five plastic baggies with white powder residue inside; three books about cocaine; pieces cut from magazines.

edge, power, or intention to exercise control over the [contraband], . . . presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). In this case, the scale is tipped.

Not only was the defendant present in the apartment at the time the contraband was found, but the apartment was rented to him and his girl friend. See *Commonwealth* v. *Rosa, supra* at 499. The defendant's retreat into the closet containing cocaine and cocaine paraphernalia allowed an inference of consciousness of guilt. *Commonwealth* v. *LaPerle, supra* at 427. Furthermore, a search of the defendant revealed $450 inside the defendant's underwear between his buttocks and over $100 in his pants pocket. In addition, there was evidence of packets of cocaine on the living room table in plain view of the defendant, a triple beam scale with cocaine on the top in the closet to which the defendant ran, a bag of cocaine behind a stereo amplifier, test tubes used for testing the quality of cocaine, tubes used for snorting cocaine, devices used to sift cocaine, and books on cocaine. There was no error.

*Judgment affirmed.*