COMMONWEALTH vs. ANDRE ARIAS
(and four companion cases[1]).

No. 89-P-1114.

Plymouth. September 17, 1990. - December 18, 1990.

Present: WARNER, C.J., FINE, & PORADA, JJ.

Further appellate review granted, 409 Mass. 1103 (1991).

*Controlled Substances. Practice, Criminal*, Dismissal, Indictment, Grand
jury proceedings, Required finding. *Grand Jury.*

Sufficient evidence was presented to warrant a grand jury in indicting each
of five criminal defendants for trafficking in cocaine. [616-617]
The evidence presented at a jury-waived trial of indictments for trafficking
in cocaine was sufficient to establish that each of five defendants had
possession and control of the cocaine found by police in their search of
a certain apartment. [617-620]

INDICTMENTS found and returned in the Superior Court
Department on March 7, 1988.

Pretrial motions to dismiss were heard by *John D.
Sheehan*, J., and the cases were also heard by him.

*Stephen H. Merlin* for Andre Arias.

*M. Page Kelley*, Committee for Public Counsel Services,
for Jose A. Nunez.

*Kevin Connelly* for Melvin Diaz.

*Thomas J. Amoroso* for Jose Gonzalez.

*William M. Leonard* for Rafael D. Mehejia.

*John P. Corbett*, Assistant District Attorney, for the
Commonwealth.

WARNER, C.J. After a jury-waived trial in the Superior
Court, each of the defendants was convicted of trafficking in
cocaine in violation of G. L. c. 94C, § 32E(*b*)(1), as in effect

[1]The four companion cases are against Melvin Diaz, Jose Gonzalez,
Rafael D. Mehejia and Jose A. Nunez.

prior to St. 1988, c. 124. Their appeals raise common and discrete issues.

On January 11, 1988, State Trooper Anthony Thomas, a member of the narcotics unit of the office of the district attorney for Plymouth County, went to an apartment building at 227 North Main Street in Brockton.[2] There, he was met by a black male named Angelo who escorted Thomas to apartment twelve on the third floor. Angelo knocked on the door, spoke in "broken English" with a person inside the apartment through a crack in the door, slid $20 which he had obtained from Thomas through the crack and received a plastic bag containing .77 grams of twenty-seven percent cocaine in return. Thomas was unable to observe any occupant of the apartment.

The trooper returned to the apartment on January 12, 1988, and consummated another transaction. When he knocked on the apartment door, Thomas heard a noise like "wood being removed from a metal object" and a "thump." A person with a "dark-skinned hand" opened the door the width that a chain lock allowed. Thomas exchanged $20 for a plastic bag containing .9 grams of twenty-five percent cocaine. Again, Thomas could not identify any person in the apartment.

At 5:45 A.M. on January 13, 1988, six police officers executed a no-knock search warrant at the apartment. The front door was opened with a battering ram. As this was occurring, an officer stationed outside on a porch observed a flickering candle and two or three people run from a bedroom. Another officer, positioned in the driveway, saw a light go on, a kitchen window opened, and three tin foil packages thrown by an arm coming out the window. One package fell at the officer's feet and was empty; the other two landed on an adjacent roof top; one contained twenty-nine plastic bags (42.08 grams) of thirty-one percent cocaine and the other

---

[2]Thomas acted on the instructions of his supervisor, who was told by a confidential informant that three Hispanic males were selling cocaine from an apartment at that location.

contained twenty-seven plastic bags (24.35 grams) of thirty-one percent cocaine.

The police officers found the five defendants in the living room. Two of them were "bare chested." A search of the kitchen turned up six plastic bags (7.54 grams) of thirty-one percent cocaine and two containers of lactose,[3] all on open shelves. Each defendant carried cash.[4] Each defendant denied that he lived in the apartment[5] and each stated that he was an unemployed construction worker and came from the Dominican Republic.

The apartment was sparsely furnished.[6] There was only a mattress in the bedroom, a couch and a chair in the living room, and some men's clothing, not linked to any defendant, strewn about. When the police entered, the front door had been barricaded inside with two bracketed lengths of two-by-four boards across the door, a dead bolt, a slide bolt and a chain lock.[7] A second door led to an outer porch and was secured from the inside by nailed two-by-four boards and plywood covering the glass portion. On top of the plywood was a calculator and behind it $400 in cash. In the bathroom, the police discovered an overflowing bucket of water under the spout in the bathtub; water was dripping or running slowly from the spout. A State trooper testified that he had seen such an arrangement almost every time there were similar barricades and that it is typically used to dispose of bulk cocaine by dissolving it.

---

[3]Chemical analysis showed lactose to be a diluent in all of the cocaine found.

[4]Arias had $159, Diaz $109, Gonzalez $336, Mehejia $44, and Nunez, $425.

[5]A State trooper testified that subsequent to the search of the apartment, the identities of the tenant and the owner of the building were determined. Neither was present at the time of the search and the arrests of the defendants.

[6]Apparently, the apartment contained only a bedroom, bathroom, living room and kitchen.

[7]A State trooper participating in the execution of the warrant testified that he had observed "thirty or forty" similar barricades in the very recent past.

1. *The motions to dismiss the indictments.* The defendants Arias, Diaz and Mehejia challenge the denials of their motions to dismiss the indictments. Each relies on *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982), and claims that the evidence presented to the grand jury showed no more than mere presence in the apartment. There was no error.

The general and long-standing rule is that a "court will not review the competency or sufficiency of the evidence before a grand jury." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). An exception to that rule was laid down in *McCarthy, supra* at 163— "[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him." 385 Mass. at 163. "[A] requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *O'Dell, supra* at 451. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Ibid.*, quoting from Smith, Criminal Practice and Procedure § 104 (2d ed. 1983). The question in this case is whether the grand jury was presented with sufficient evidence which would justify a finding that when the police officers made the arrests, they had "reasonably trustworthy information sufficient . . . to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), quoting from *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949). See *Commonwealth* v. *O'Dell, supra* at 450; *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 402 (1989).

Here, unlike *McCarthy*, there was evidence before the grand jury of more than mere presence of the defendants. The purchase of cocaine on the two days preceding the execution of the warrant, the heavily barricaded apartment, the time of day, the attempt to dispose of cocaine, the cocaine and other materials found in the search of the apartment, the sparse furnishings, the cash found on each of the defendants

and in the apartment, and their unemployed status provided ample probable cause to arrest. "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Hason, supra,* quoting from *Brinegar* v. *United States, supra* at 175.

2. *The motions for required findings of not guilty.* Each of the defendants presented a motion for a required finding of not guilty at the close of the Commonwealth's case,[8] arguing that the evidence established no more than mere presence at a scene where cocaine was found. Our review of the denials of the motions is under familiar standards. We look to see whether any rational trier of fact, taking the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, could have found the essential elements of the crime beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979); *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989).

The defendants were charged with trafficking in cocaine with a net weight of twenty-eight or more but less than 100 grams. G. L. c. 94C, § 32(b)(1), as in effect prior to St. 1988, c. 124. Possession of the quantity of cocaine found in the apartment and on the adjacent roof, as well as the packaging of the drug, permitted an inference of trafficking. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 653 (1990), and cases cited. The crucial question is whether the Commonwealth presented sufficient evidence that each defendant possessed the cocaine found. "Possession implies 'control and power,' exclusive or joint . . ., or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. at 409, quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn

---

[8]The defendants presented no evidence.

therefrom." *Commonwealth* v. *Brzezinski, supra,* quoting from *Commonwealth* v. *LaPerle,* 19 Mass. App. Ct. 424, 426 (1985). "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband] . . . presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency.'" *Brzezinski, supra* at 409, 410, quoting from *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.'" *Commonwealth* v. *Merola,* 405 Mass. at 533, quoting from *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). "The Government . . . need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Commonwealth* v. *Merola, supra,* quoting from *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985). "Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense" (footnote omitted). *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30, 32 (1976). *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 508 (1983). "Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." *United States* v. *Smith,* 680 F.2d 255, 260 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983).

The Commonwealth's case depended on proof of constructive possession of the cocaine in the apartment by each defendant. This required a showing that each knew of the presence of cocaine and had the ability and intention to exercise dominion and control over it. See *Commonwealth* v. *Brzezinski,* 405 Mass. at 409. It is beyond serious question that the judge could reasonably infer from the evidence we have recited that each defendant had knowledge of the presence of cocaine. See *Commonwealth* v. *Albano,* 373 Mass. 132, 135

(1977). Contrast *Commonwealth v. Flaherty*, 358 Mass. 817 (1971).

There could hardly be more potent evidence of an intention by the defendants to exercise dominion and control of the premises and its contents than their presence at an early morning hour in a heavily barricaded apartment, sparsely furnished and in the absence of either the owner or the tenant.[9,10] Contrast *Commonwealth v. Flaherty, supra*; *Commonwealth v. Williams*, 3 Mass. App. Ct. 370, 371-372 (1975). The defendants' reliance on cases which involve defendants who are shown to have, or not to have, some property interest in the premises where drugs are found is misplaced. Those cases represent only examples of the kind of circumstantial evidence thought persuasive on the question of knowledge or constructive possession in particular and distinguishable circumstances. See and compare, e.g., *Commonwealth v. Flaherty, supra* at 818; *Commonwealth v. Brzezinski, supra* at 410; *Commonwealth v. Pratt*, 407 Mass. at 652-653; *Commonwealth v. Williams*, 3 Mass. App. Ct. at 371; *Commonwealth v. LaPerle*, 19 Mass. App. Ct. 424, 429 (1985). As this case demonstrates, "[e]ach instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide . . ." *Commonwealth v. Sendele*, 18 Mass. App. Ct. 755, 758 (1984).

---

[9]Compare Federal cases in which crew members of a vessel have been held to possess drugs constructively on principles of proximity, association and containment, e.g., *United States v. Smith*, 680 F.2d 255, 260 (1st Cir. 1982) (2,000 mile voyage, 256 bales of marihuana); *United States v. Lopez*, 709 F.2d 742, 746-747 (1st Cir.), cert. denied, 464 U.S. 861 (1983), and cases cited (2,000 mile voyage, fourteen tons of marihuana); *United States v. Marsh*, 747 F.2d 7, 9 (1st Cir.), *S.C.*, 747 F.2d 14, 15 (1st Cir. 1984) (nineteen day voyage, sixty tons of marihuana); *United States v. Robinson*, 843 F.2d 1, 8-9 (1st Cir.), cert. denied, 488 U.S. 834 (1988) (seventeen day voyage, twenty tons of marihuana).

[10]The judge could consider the evidence of cash found on each of the unemployed defendants on the questions of knowledge, intention and control. While the amounts (see n.4, *supra*) were not in all cases substantial, it could be inferred from the buys ($20 each) by Trooper Thomas on the two previous days that transactions from the apartment involved small amounts of money and cocaine.

Commonwealth *v.* Arias.

We conclude that the judge, taking the evidence and reasonable inferences in the light most favorable to the Commonwealth, could have found as to each defendant the essential elements of trafficking in cocaine beyond a reasonable doubt. As we have said, the Commonwealth's proof "need not exclude every reasonable hypothesis of innocence" as, for example, the possibility that the defendants were casual visitors to the apartment. See *Commonwealth* v. *Merola*, 405 Mass. at 533. Indeed, here the physical characteristics of the apartment, the time of day and the absence of either the owner or tenant cut heavily against such an inference. An inference need not be necessary and inescapable but only reasonable and possible. See *ibid.*

3. *Other claims.* We have reviewed the other claims of error raised by Arias and Mehejia, including those in connection with the denials of their motions for a new trial, and find them to be without sufficient merit to require discussion; each approaches the frivolous.

*Judgments affirmed.*