COMMONWEALTH *vs.* CRUZ SILVESTRE GARCIA SOTO.

No. 92-P-1168.

Worcester. February 17, 1993. - September 22, 1993.

Present: PERRETTA, IRELAND, & GREENBERG, JJ.

*Search and Seizure*, Probable cause, Affidavit. *Probable Cause. Constitutional Law*, Search and seizure, Probable cause.

A Superior Court judge correctly denied a criminal defendant's motion to suppress evidence seized pursuant to a warrant issued on the basis of information provided by a confidential informant, where the informant's assertion of firsthand knowledge coupled with the specificity of the facts that he furnished lent credence to the belief that he personally saw criminal activity and warranted a finding of reliability, and where, based upon their training and experience, police officers who observed numerous suspicious visits to the place where the informant claimed the contraband was located, at the precise time when the informant had said the contraband would be available for sale, reasonably inferred from their observations that drug sales were taking place at the location. [342-345]

INDICTMENTS found and returned in the Superior Court Department on May 6, 1987.

A motion to suppress evidence was heard by *Herbert F. Travers, Jr.*, J., and the cases were tried before *Robert J. Hallisey*, J.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Patricia C. Smith*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Once again we are asked to consider the reliability of an unnamed informant whose communications to police resulted in the issuance of a search warrant. The broader subject of our inquiry remains whether there was probable cause to believe, at the time of the application for the search warrant, that evidence of criminal activity would

be found at the premises identified in the warrant. *Commonwealth* v. *Reddington*, 395 Mass. 315, 323 (1985).

Pursuant to a search warrant issued on January 5, 1987, police forcibly entered an apartment in Fitchburg where they found a hand gun, ammunition, and a bag containing a substance which, upon subsequent analysis, proved to be 176.8 grams of cocaine. On November 13, 1987, based upon the evidence discovered during this search, a Superior Court jury convicted the defendant, Cruz Silvestre Garcia Soto, of trafficking in more than 100 but less than 200 grams of cocaine, unlawful possession of cocaine with intent to distribute, unlawful possession of a firearm, and unlawful possession of ammunition. In his appeal from his convictions, the defendant's sole contention is that the motion judge mistakenly denied his suppression motion. He claims that the affidavit filed in support of the application for the search warrant fell short of establishing probable cause because the unnamed informant's veracity was not established. We conclude that the judge properly denied the motion to suppress evidence from the search.

Before applying for the warrant, Fitchburg police Detective David Caputi spoke with a confidential source. The informant had previously given Caputi information about drug deals in the Fitchburg area which had led to the arrest of Frederick Santiago in July of 1986 for trafficking in cocaine. At the time Caputi received the information repeated in his affidavit, Santiago was awaiting trial in the Superior Court. From this circumstance, the motion judge surmised that there had been a determination of probable cause by either a District Court judge or the grand jury, or both.

The affidavit also recited that one Domingo Abreo told the informant that the defendant recently received a shipment of cocaine from New York.[1] Abreo told the informant that the

---

.[1]Domingo Abreo was in fact serving a sentence in another county at the time this conversation allegedly took place. Before the trial, and by appropriate motion, the defendant raised this problem by blaming Caputi, rather than the informant, for including this false information in the affidavit. The defendant claimed that the affiant could easily have verified the tip by a quick records check. After a hearing pursuant to *Franks* v. *Dela-*

cocaine would be ready for marketing at about 6:00 P.M. that day. He told the informant that the stash was stored at his Fitchburg apartment on the second floor of 67 Cedar Street. The informant also told Caputi that a woman named "Anna" lived in the same apartment; and that Abreo was about to prepare the cocaine for sale.

After a record check, Caputi confirmed that an Anna Ortiz lived at the same premises described by the informant. On the strength of this information two other detectives staked out the area surrounding the premises just before 6:00 P.M. A few minutes after the appointed hour they saw three people separately enter the apartment, stay a short time, and leave.[2] Noted in the third paragraph of the affidavit was the opinion of the detective reporting by radio from the stakeout, based upon his training and experience, that these actions were "consistent with those of drug dealings." As a result, the clerk-magistrate issued a search warrant for the second floor apartment.

It is well established that the substantive components of an affidavit provided by a confidential informant must comply with the standards of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Commonwealth* v. *Byfield*, 413 Mass. 426, 428-429 (1992), citing *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985). "The magistrate must 'be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis

---

*ware*, 438 U.S. 154, 155-156 (1978), the motion judge correctly concluded that the statement was not made by the affiant knowingly and intentionally, or with reckless disregard for the truth. Accordingly, the information attributed to Abreo was not redacted from the affidavit considered by the magistrate to establish the informant's veracity. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 407 (1989). See also *Commonwealth* v. *Honneus*, 390 Mass. 136, 142 (1983).

[2]The affidavit recites "apartment" and not building. No portion of the affidavit indicates where the officers were situated at the time scrutiny of the premises began. Therefore, we assume that their vantage point gave them a view of the apartment. Compare *Commonwealth* v. *Hall*, 366 Mass. 790, 798 n.9 (1975).

of knowledge test),[3] and (2) some of the underlying circumstances from which the affiant concluded that the informant was "credible" or his information "reliable" (the veracity test).' " *Commonwealth* v. *Byfield, supra* at 429.

Citing *Commonwealth* v. *Rojas,* 403 Mass. 483 (1988),[4] as authority, the defendant claims that the affidavit is fatally infirm because the informant's "track record" consisted only of "a naked assertion that in the past the informant had provided information which led to a prior arrest [and] is insufficient by itself to establish an informant's veracity." *Id.* at 486.[5] The rationale for this limitation is that "an arrest may turn out to be a dud," prompting doubt about the trustworthiness of the information which induced the arrest. *Commonwealth* v. *Shea,* 28 Mass. App. Ct. 28, 31 (1989).

The Commonwealth argues (see note 4, *supra*) that this case can be distinguished from *Rojas* and others involving only prior arrests. Here, the tip given by the informant not only led to an arrest but to an indictment still pending in Superior Court. This additional factor predisposed a determination of probable cause by a District Court judge or grand jury or a waiver by the defendant. An arrest resulting in a judicial determination of probable cause is a significant notch higher than arrest and is sufficient to bolster the credibility aspect of the informer's tip. See *Commonwealth* v. *Saleh,* 396 Mass. 406, 410 (1985) (informant reliable where he was responsible for three arrests and Federal indictments and had provided true and accurate information in the past); *Commonwealth* v. *Melendez,* 407 Mass. 53, 62 & n.3 (1990) (Greaney, J., dissenting) (the issuance of a complaint should

---

[3]The defendant does not question that the basis of knowledge of the informant was properly established.

[4]The Commonwealth contends that *Rojas* should not be retroactively applied to the instant case. If we assume without deciding that *Rojas* applies to convictions prior to that decision but still on direct review, see *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 407 (1989) (analyzing the sufficiency of the affidavit based upon *Rojas* even though the defendant was convicted before that decision), we determine that the affidavit in the instant case still establishes probable cause.

[5]Contrary to the Commonwealth's assertion, the issue was preserved below. *Commonwealth* v. *Santiago,* 410 Mass. 737, 742 (1991).

constitute enough to establish the veracity of the informant). The difficulty with using an arrest plus probable cause standard is that it too easily moves from the worthy objective of measuring the informer's credibility to becoming a further litmus test. See *Commonwealth* v. *Mebane*, 33 Mass. App. Ct. 941, 941-942 & n.1 (1992). See also *Melendez, supra* at 59.

The weight of other factors would still have to be considered; notably the existence of independent police corroboration of the situation described by the informant in the informant's tip. *Commonwealth* v. *Valdez*, 402 Mass. 65, 71 (1988). See also *Saleh, supra.* In this instance, verification went beyond innocuous facts such as the physical characteristics of the apartment and who resided there. *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322 (1989). The officers' observation of numerous suspicious visits to the apartment of short-term duration at the precise time when the informant told Caputi the cocaine would be ready for sale suggests an on going drug operation. *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1989). Cf. *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 598 (1991) (meeting between informant and the defendant at the "arranged buy time" was used to establish independent police corroboration of the informant's tip).

In sum, the informant's assertion of firsthand knowledge coupled with the specificity of the facts that he furnished lent credence to the belief that he personally saw criminal activity and warranted a finding of reliability. *Commonwealth* v. *Atchue*, 393 Mass. 343, 348 (1984). Based upon their training and experience, the officers reasonably inferred from their observations that drug sales were taking place in the apartment. See *Commonwealth* v. *Cast*, 407 Mass. 891, 900 (1990), and cases cited.

Judicial concern for preserving and strengthening constitutional protections is not served by "[a] grudging or negative attitude . . . toward warrants," *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965), nor by disregard of well-established principles urging reviewing courts to "give great defer-

ence to the magistrate's determination of probable cause,"
*Commonwealth* v. *Upton*, 394 Mass. at 377.

*Judgments affirmed.*