COMMONWEALTH *vs.* FREDERICO RAMIREZ.

No. 96-P-1949.

Suffolk. March 25, 1999. - May 25, 2000.

Present: PERRETTA, PORADA, & LENK, JJ.

*Search and Seizure,* Affidavit. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Conduct of government agents, Disclosure of identity of informer. *Evidence,* Informer, Credibility of witness, State of mind, Relevancy and materiality.

The record of a *Franks* hearing (*Franks* v. *Delaware,* 438 U.S. 154 [1978]), supported a Superior Court judge's conclusion that the defendant had not sustained his burden of showing by a preponderance of the evidence that an affiant had intentionally or recklessly made false statements in an affidavit in support of a search warrant [262-263], and there was no error in the judge's findings with respect to the affiant's credibility [263-264], exclusion of seventy-one other affidavits submitted by the affiant over a two-year period [264-265], refusal to consider testimony of the affiant at a prior hearing for its probative value [265-266], and exclusion of irrelevant evidence of the affiant's state of mind [266].

An affidavit in support of an application for a search warrant provided probable cause for the warrant to issue. [266-267]

At a *Franks* hearing, the judge took proper measures, out of concern for a confidential informant's safety, to prevent disclosure of the identity of the informant, including the exclusion of the defendant from the courtroom when the informant testified, impounding her decision, and forbidding defense counsel from discussing the informant's testimony with the defendant, and there was no violation of the defendant's constitutional rights. [267-268]

INDICTMENT found and returned in the Superior Court Department on June 8, 1988.

Following review by the Supreme Judicial Court, 416 Mass. 41 (1993), a hearing in accordance with *Franks* v. *Delaware,* 438 U.S. 154 (1978), was had before *Sandra L. Hamlin,* J.

*John Salsberg* for the defendant.

*Lisa M. Scalcione,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On June 8, 1988, the defendant was indicted for trafficking in cocaine. In defending against the indictment, he brought a motion to suppress evidence seized pursuant to a warrant which issued upon an application setting out information supplied to the affiant by a confidential informant. The motion was denied, the defendant proceeded to trial and, in 1989, he was found guilty of possession of cocaine with intent to distribute. While his appeal was pending, the Supreme Judicial Court issued its opinion in *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989). That opinion prompted the defendant's appellate counsel to research all search warrants issued on the basis of affidavits in which the affiant in the instant matter relied upon an informant identified only as IT. Based upon the results of that search, counsel filed a motion for a new trial. The motion was denied, and the appeal from that denial was consolidated with the pending appeal from the conviction. After argument on the consolidated appeals before the Supreme Judicial Court, the matter was remanded to the Superior Court for a hearing in accordance with *Franks* v. *Delaware*, 438 U.S. 154 (1978). See *Commonwealth* v. *Ramirez*, 416 Mass. 41 (1993). At the conclusion of the *Franks* hearing, a Superior Court judge found and concluded that the affiant had not misrepresented, intentionally or recklessly, the facts set out in his affidavit. The defendant appealed, and we affirm the order.

1. *The search warrant.* On September 24, 1987, Boston police detective Eduardo Dominguez (Dominguez) applied for a warrant authorizing him to search apartment number 38 in a multistory brick apartment building situated at 170 Parker Hill Avenue in the Roxbury section of Boston. As indicated in the warrant, the apartment was either occupied or possessed by the defendant, who was described as a Hispanic male with dark hair and eyes, about thirty years of age, with height being about 5'7" and weight about 150 pounds. Dominguez sought to search the apartment for cocaine and other controlled substances, paraphernalia used in the weighing, bagging, and cutting of controlled substances for distribution, and money and personal records or papers indicative of dealing in controlled substances. In support of his application, Dominguez swore to the following facts.

> "A reliable informant, who has proven to be reliable in the past by furnishing information to me which led to the ar-

rest and conviction of one Luis Ortiz . . . for Distribution of a class A controlled substance and the arrest and pending trial of one Felix Zorrilla . . . for Trafficking in Cocaine. My informant hereafter referred to as IT now tells me that within the past two weeks and most recently within the past twenty-four hours IT has been present in apartment #38 located at #170 Parker Hill Ave., Roxbury, a multi story brick apartment building and while present therein observed the occupant of said apartment who is known to IT as Federico Ramirez a/k/a Juan Doe a hispanic male app. 30 years of age, 5'7" tall, 150 lbs., dk eyes, dk hair answer several knocks to the front door of said apartment and allow into the premise an unknown hispanic male and after conducting a brief conversation with said unk [*sic*] hispanic male Federico would ask the caller to sit and wait while he went into another room in said apartment returning a short while later with a large clear plastic bag and a scale, after weighing a small amount of the white powder he handed the smaller bag of powder to the unknown hispanic caller who had handed Federico the US currency. This occurred on numerous occasions while IT was present. IT further states that IT believes the white powder to be Cocaine. As a result of the above information, I have conducted a covert surveillance of the aforementioned apt 38 located at #170 Parker Hill Ave Rox at diverse times during the past two days and have observed an unusual amount of traffick enter and exit said apartment after a short period of time. Some of the callers I observed enter and exit said premises are known to me to be involved in drug Trafficking. As a result of the foregoing information and observations made by me along with my experience as a Boston Police officer for over 8 years and having been involved in hundreds of arrests involving the violation of chapter 94c the controlled substance act, I have reason to believe and do believe that controlled substances are being distributed from apartment #38 located at #170 Parker Hill Ave, Rox a multi-story brick apartment building."

A search warrant issued that same day. Upon its timely execution, the police seized 235 grams of cocaine, personal papers, and a scale from apartment number 38, as well as thirteen bags of cocaine from the defendant.

2. *The hearings on remand.* In *Ramirez*, 416 Mass. at 51-53, the court held that the defendant had "raised enough inferences of police misconduct to warrant further inquiry at a *Franks* hearing," and that, prior to that hearing, the judge was to conduct an in camera hearing to determine whether, in her sound discretion, she should compel disclosure of IT's identity. See generally *Commonwealth* v. *Amral*, 407 Mass. 511 (1990).

a. *The in camera hearing*.[1] At this hearing, IT testified that IT met Dominguez when IT encountered trouble with the police. To extricate itself from these problems, IT supplied Dominguez with "lots of information" about drugs and the Spanish community. More particularly, in 1987, IT gave Dominguez information about the defendant and his drug dealings. IT stated that IT had been in the defendant's Parker Hill apartment but could not remember when and that the apartment was located near a hospital where the defendant worked. IT also stated that the defendant told IT everything, and, in turn, IT told Dominguez that the defendant carried drugs which he put in a closet in the apartment. IT denied that IT had ever seen the defendant with cocaine in his possession.

Based upon IT's testimony at this hearing, the judge found and concluded that IT, in fact, did exist, that IT was the same IT referred to by Dominguez in his affidavit, and that there was no compelling reason to disclose IT's identity.

b. *The Franks hearing.* Two days after the in camera hearing, the judge held the *Franks* hearing in the presence of counsel. To protect the informant's identity, the judge had IT stand behind a blackboard as IT testified, and the judge excluded the defendant from the courtroom.[2]

Because of the judge's concerns for IT's safety should IT's identity be revealed, see note 2, *supra*, she impounded her deci-

---

[1]This hearing was held without the presence of counsel and the defendant.

[2]These measures were implemented by the judge for the reasons stated in her memorandum of decision in which she cited and relied upon *Commonwealth* v. *Douzanis*, 384 Mass. 434, 440-443 (1981): "The defendant was not present at these hearings to protect the safety of IT. The defendant and IT were and are well known to each other and the defendant would have immediately known who IT was. While mindful of the defendant's rights, this Court could see no other way to allow the defendant his hearing and protect the safety of IT other than to follow this procedure."

sion. We, in turn, do not recite IT's testimony in any detail.[3] IT testified that after IT's arrest in 1987 for trafficking in cocaine, IT had given Dominguez information about drug dealings by the defendant, who lived in an apartment on Parker Hill.

IT also stated that because of the passage of time and the "thousands and thousands" of people IT knew, IT had no present memory of supplying Dominguez with information about Luis Ortiz or Felix Zorilla. IT subsequently admitted to knowing someone named "Felix" but would not know if he was Zorilla without seeing him. Although IT held firm to the facts that the defendant had told IT about his drug transactions and that he kept drugs in his closet and that IT had relayed to Dominguez the defendant's statements concerning his drug dealings and his use of a closet in his apartment as a repository for the cocaine, IT also testified that IT had never been in the defendant's apartment and that IT had never seen the defendant sell drugs to anyone, either from his apartment or any other place.

Dominguez testified that he had memory of conversations with IT in which IT described the defendant (name, height, weight, approximate age, and location of the defendant's apartment) and that IT "had witnessed drug transactions." Dominguez stated that he had arrested IT in March of 1987, and that after discussion, IT had agreed to supply him with information concerning drug transactions in exchange for his (Dominguez's) assistance with IT's own problems. As for IT's reliability as an informant, Dominguez could not produce any records concerning the information received by him from IT concerning Luis Ortiz.

As indicated in the application for the search warrant, Dominguez conducted a covert surveillance of the defendant's apartment. As stated by Dominguez during the *Franks* hearing, he had been inside 170 Parker Hill Avenue on numerous occasions prior to the defendant's arrest, and this particular building, as well as all the brick apartment buildings in the area, were locations in which drugs had been distributed. He also testified that, based upon IT's information, he conducted a surveillance of the defendant's apartment during which he observed an unusual number of individuals known to him as being involved

---

[3]A recitation of IT's testimony and the judge's detailed and comprehensive findings easily could lead to the identity of the informant.

in drug trafficking enter and, shortly thereafter, exit the defendant's apartment.

c. *The findings.* In *Commonwealth* v. *Amral*, 407 Mass. at 519 n.8, the court noted: "[A] *Franks* hearing is designed to examine whether the *affiant* intentionally or recklessly included false statements in an affidavit. The hearing is not designed to impeach the informant's veracity." (Emphasis in original.) Although fully aware of that reminder, the judge concluded that, because IT denied making some of the statements attributed to IT by Dominguez in his affidavit, findings concerning the credibility of both IT and Dominguez were required.

Based upon her observations and the evidence before her, the judge accepted parts of IT's testimony while rejecting others. See *Commonwealth* v. *Daughtry*, 417 Mass. 136, 140 n.1 (1994), and cases therein cited. More particularly, she accepted most of IT's testimony but, significantly, rejected IT's denials that IT had been present in the defendant's apartment when he sold drugs. Instead, the judge specifically found that IT had told Dominguez that IT was present and witnessed drug sales by the defendant from the apartment in issue. On the other hand, the judge found Dominguez "to be a credible witness." However, because he was unable to produce any police records to support the representation that he had relied upon information supplied by IT in support of his investigation of Luis Ortiz, the judge excised that statement from the affidavit.[4]

3. *Sufficiency of the defendant's evidence.* Based upon the facts as she found them to be, the judge concluded that the defendant had not sustained his burden of showing by a preponderance of the evidence (see *Franks* v. *Delaware*, 438 U.S. at 165, 171-172; *Commonwealth* v. *Ramirez*, 416 Mass. at 49-50) that Dominguez had misrepresented any of the facts set out in his affidavit. The defendant argues on appeal that any

---

[4]The judge's finding that Dominguez was a credible witness is not inconsistent with her excision of all reference to Luis Ortiz from the affidavit. The deletion was not based upon a determination that the reference to Ortiz was false. Rather, it appears to be based upon the fact that Dominguez could not produce any records concerning Ortiz because, as stated by the judge: "Dominguez . . . could find no records in the drug control unit. Since 1986, the Drug Control Unit had moved from 154 Berkeley Street in Boston to 3345 Washington Street in Jamaica Plain. Only some of the records were moved. The police officer responsible for the records was [whoever] was in charge of the drug unit at the time."

failure by him to meet his burden was due to various erroneous rulings of the judge. We take up the challenged rulings.

a. *Dominguez's credibility.* "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court . . . and we do not substitute our judgment for [hers], absent clear error." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). The defendant argues that the judge's determination that IT was not entirely credible whereas Dominguez was believable in all respects was based upon an error of law. Citing *Atkinson* v. *Rosenthal*, 33 Mass. App. Ct. 219, 224 (1992) ("disbelieving evidence does not establish the contrary position"), the defendant claims that the judge's finding is based upon her disbelief of IT's testimony (that IT had not made certain statements to Dominguez) rather than affirmative proof that IT had made the disputed statements to Dominguez. He also alleges that this error was exacerbated by the fact that the judge's assessment of Dominguez was based *solely* upon his testimony showing that he was an experienced police officer.

It was not the Commonwealth's burden to show that IT had made the challenged statements to Dominguez. Rather, it was the defendant who was required to show that Dominguez had made false statements in his affidavit, either intentionally or with a reckless disregard for the truth. See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 407 (1989), and cases therein cited; *Commonwealth* v. *Pratt*, 407 Mass. 647, 658 (1990). The only admissible evidence that the defendant offered on the question of whether IT had made certain statements to Dominguez was IT's testimony. Because the judge found that testimony not credible, the defendant failed to meet his burden of proof.

Moreover, the judge's decision to believe Dominguez did not rest solely upon the fact that he was an experienced police officer. The defendant's argument to the contrary is based entirely upon his reading of the following finding of the judge: "[A]t the time [Dominguez] testified [he] had been a police officer for fourteen years. At the time he applied for the search warrant in this case he had been a police officer for eight years and involved in hundreds of drug arrests as a member of the drug control unit. He is a police officer very experienced in the area of narcotics. I find him to be a credible witness." When this statement is read in the context of the decision in its entirety, we think it clear that the finding is an explanation by the judge

for her determination that Dominguez's inability to remember the specifics of his conversations with IT and his surveillance of the defendant's apartment was credible.[5]

b. *Dominguez's prior affidavits.* Here the defendant makes the argument that the judge erroneously excluded from evidence seventy-one affidavits submitted by Dominguez over a two-year period in which he swore that he had relied upon an informant identified as IT.[6] He claims that the scope of the remand order in *Commonwealth* v. *Ramirez,* 416 Mass. at 52-54, required the judge to admit those affidavits in evidence and that they should have been admitted because they "tended" to prove that Dominguez intentionally made false statements in the affidavit in issue.

We see nothing in the *Ramirez* remand order which required the judge to take the affidavits in evidence during the *Franks* hearing. As we read that order, the court's reliance upon the affidavits concerned *only* the issue of whether the defendant had sustained his burden of showing that he was entitled to a *Franks* hearing to question IT's existence. *Commonwealth* v. *Ramirez,* 416 Mass. at 50-52. IT appeared before the judge and testified in camera. That testimony led the judge to find and conclude that the informant identified as IT existed, that IT, in fact, was the informant referred to in the affidavit in dispute, and that IT's identity was not to be disclosed at the *Franks* hearing. Compare *Commonwealth* v. *Lewin,* 405 Mass. 566, 582-583 (1989), wherein the court concluded that the Superior Court judge's finding that "John" existed was clearly erroneous. In short, there is nothing in the *Ramirez* order that bound the judge to admit the prior affidavits in evidence at the *Franks* hearing.

Further, we do not think the affidavits "tended" to show that, contrary to Dominguez's statements in the present affidavit, IT

---

[5]During the *Franks* hearing, Dominguez stated that his affidavit refreshed his recollection only as to its contents and the facts that he had met and spoken with IT about the defendant and his drug activities. However, because of the passage of time and the number of investigations he had conducted over the years, he had no independent memory of his "actual conversation[s]" with IT.

[6]The transcript reflects that the seventy-one affidavits were put in evidence and marked as Exhibit 1. Based upon the fact that the judge made no mention of the affidavits in her findings, the defendant suggests that they were marked only for identification for purposes of appellate review. We will assume for purposes of decision that the affidavits were excluded from evidence and received for the limited purpose of their inclusion in the record.

could not have supplied Dominguez with information about Luis Ortiz and Felix Zorilla. The defendant's claim of relevancy is based upon the following reasoning. Because the prior affidavits show that Ortiz's case predated IT's arrest, IT could not have given Dominguez any information about either Ortiz or Zorilla.[7]

There are two serious flaws in the defendant's reasoning. First, his assertion that Ortiz was arrested and convicted prior to the date IT became an informant for Dominguez is not based upon any evidence. Rather, the claim rests upon defense counsel's statement to the judge that his search through Suffolk Superior Court files produced information on only one Luis Ortiz. Although defense counsel's commendable investigatory effort on behalf of his client was sufficient to entitle the defendant to a *Franks* hearing, see *Ramirez, supra*, the judge was not bound to accept his representation, made during argument on the issue of the admissibility of the affidavits, as an evidentiary basis for a finding that the Luis Ortiz located in court files was the same Luis Ortiz relied upon by Dominguez and, therefore, that Dominguez had made a false statement of fact. Instead, the judge chose to require Dominguez to produce any and all records he had concerning his dealings with a Luis Ortiz. When he was unable to do so, through no fault of his own (see note 4, *supra*), she excised the reference to Ortiz from the affidavit.

Building upon the suggestion that IT could not have been an informant against Ortiz, the defendant argues that, if IT could not have given Dominguez any information leading to Ortiz's arrest and conviction, then IT could not have supplied any information about Zorilla. Even accepting the fact, as we do, that the IT cited by Dominguez in connection with a Luis Ortiz was the same informant he relied upon in respect to Felix Zorilla, we think the defendant's argument is based upon speculation rather than evidence. Our conclusion is reinforced by the fact that all the prior affidavits in which Dominguez cites Zorilla's arrest as demonstration of IT's reliability are dated subsequent to the time of IT's arrest.

c. *Dominguez's prior testimony*. Prior to trial on the indictment against the defendant, a Superior Court judge conducted a

---

[7]It should be recalled that IT testified at the *Franks* hearing that IT had no present memory of supplying Dominguez with information about Ortiz and that, although IT knew someone named "Felix," IT would not know whether he was Felix Zorilla without first seeing him.

hearing to determine whether the identity of IT should be disclosed. See *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499 (1973). The defendant argues that Dominguez's *Ennis* testimony was inconsistent in many respects with that given at the *Franks* hearing and that the judge erred in refusing to consider the earlier testimony for its probative value. See *Commonwealth* v. *Daye*, 393 Mass. 55, 65-67 (1984).

Our review of the transcripts of the two hearings reveals only one inconsistent statement: Dominguez testified at the *Ennis* hearing that he had been working with IT for about a "little over a year prior to" September of 1987. At the *Franks* hearing, Dominguez acknowledged that his prior statement was incorrect and that the correct time frame was about six months prior to September, 1987.

In making this argument, the defendant overlooks the fact that he never sought to use the prior statement for any purpose other than impeachment. Moreover, we think the defendant's limited use of the earlier statement was intentional. Any probative value in Dominguez's assertion that he had been working with IT for over a year prior to September, 1987, would seriously undermine the defendant's previous argument that IT could not have informed on Ortiz or Zorilla. See *Commonwealth* v. *Mitchell*, 38 Mass. App. Ct. 184, 194-195 (1995).

d. *Dominguez's state of mind.* Relying upon *Commonwealth* v. *Brzezinski*, 405 Mass. at 407-408, the defendant argues that the judge erred in sustaining objections to questions put to Dominguez about his overtime pay, the practices of other officers in his department, and any attempts made by him to "confirm" information supplied by IT. Even assuming these questions were probative of Dominguez's state of mind at the time he prepared the affidavit in issue, we fail to see the relevancy of Dominguez's state of mind. As we read *Brzezinski*, Dominguez's state of mind would be relevant on the issue of whether any false statement by him was made intentionally or recklessly rather than negligently. Here the defendant has not even shown that a false statement was made. *Ibid.*

4. *Sufficiency of the affidavit.* Bound as we are by the judge's finding that Dominguez had truthfully related IT's statements to him, we next consider whether the affidavit passes muster under the two-prong test set out in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). The defendant concedes that the basis of IT's knowledge was

adequately established in the affidavit and limits his claim to whether IT was shown to be reliable. Because the judge excised all reference to Luis Ortiz from the affidavit, IT's reliability turns on the statement in the affidavit made in respect to Felix Zorilla.

We think the affidavit sufficient. IT's information concerning Zorilla led to his arrest and pending trial, which predisposes a finding of probable cause, in the Superior Court. Additionally, Dominguez described in the affidavit his independent verification of IT's claims about the defendant's sale of drugs from the apartment for which the warrant was being sought. See *Commonwealth* v. *Soto*, 35 Mass. App. Ct. 340, 343-344 (1993).

5. *Deprivation of constitutional rights.* As noted at the outset, it was left to the judge on remand to determine whether to disclose IT's identity in conducting the *Franks* hearing. See *Commonwealth* v. *Ramirez*, 416 Mass. at 53. Because of concerns for IT's safety should IT's identity be revealed, see note 2, *supra,* the judge excluded the defendant from the courtroom while IT and Dominguez testified, ordered defense counsel not to discuss the witnesses' testimony with the defendant, and impounded her decision. The defendant argues that these measures violated his rights guaranteed by the Sixth and Fourteenth Amendments to the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights.

> "The question whether a judge may require the government to identify an informant in the course of considering a defendant's claim that the affidavit contains intentional or reckless misstatements is a serious one. This is particularly so when the preliminary, substantial showing required by the *Franks* case and by *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*[, 383 Mass. 764 (1981),] has not been made. The government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth. That privilege serves a substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity. The privilege, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant." (Internal citations omitted.)

*Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981).

There were only two issues before the judge on remand, whether IT was a fictitious informant and, if not, whether Dominguez falsely represented in his affidavit statements made to him by IT. It was established at the in camera hearing that IT existed and had made statements to Dominguez concerning the defendant. The only remaining question to be explored at the *Franks* hearing was whether Dominguez falsely represented in his affidavit what IT had told him about the defendant. The judge made detailed findings in support of her conclusions that IT's identity would be known and IT's safety jeopardized were the defendant allowed to be present while IT and Dominguez testified. Defense counsel was present and cross-examined both witnesses at length. Moreover, the defendant's argument is not accompanied by any demonstration that his presence might have been helpful to challenging Dominguez's testimony that IT had made the disputed statements set out in the affidavit. In these circumstances, we see no error in the steps taken by the judge to protect IT's identity from disclosure "as far as reasonably possible consistent with fairness to [the] defendant." *Commonwealth* v. *Douzanis, supra.* See *Commonwealth* v. *Snyder,* 413 Mass. 521, 533 (1992).

*Order after remand affirmed.*

*Judgment affirmed.*