COMMONWEALTH vs. MICHAEL A. RANCOURT.

Bristol. December 3, 1986. — February 18, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Admissions and confessions, Evidence obtained by private party, State action. *Evidence,* Admissions and confessions, Prior misconduct, Judicial discretion. *Rape. Practice, Criminal,* Appeal, Sentence, Allocution.

In denying a criminal defendant's motion to suppress from evidence a certain letter written by the defendant while incarcerated awaiting trial, a judge properly concluded that another inmate had acted as a private party and not as a government agent when he induced the defendant to write the letter, where the evidence before the judge warranted his findings that law enforcement personnel had not promised favorable treatment to the inmate in exchange for his securing and furnishing to them the defendant's letter, but, rather, that the inmate was motivated by "an unencouraged hope to curry favor." [271-275]

At the trial of indictments for rape and other serious crimes, there was no error in the admission of evidence that the defendant attempted forcibly to enter an automobile in which two women were riding shortly before he entered the victim's car, since this evidence tended to prove that he entered the victim's car by force, and was relevant to the issues of intent, motive, and consent. [275-276]

Where, at a rape trial, the defendant claimed that the complainant had consented to sexual acts, and conceded that he had been correctly identified, he was precluded from contending on appeal that an identification of him by certain witnesses had been improperly admitted in evidence. [276]

The judge at a criminal trial did not abuse his discretion as to the time or the manner of submitting to the jury an exhibit consisting of a certain letter in which the defendant described the incident giving rise to the charges against him. [277]

Where defense counsel at a criminal trial was afforded a sufficient opportunity to present mitigating factors before sentence was imposed, and to make clear the defendant's lack of a prison record, the judge was not required to grant the defendant's request that the case be continued to allow time for the probation department to prepare a presentence report. [277-278]

INDICTMENTS found and returned in the Superior Court Department on September 12, 1984.

The cases were tried before *Chris Byron, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth G. Littman* for the defendant.

*Dana A. Curhan,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by jury, the defendant, Michael A. Rancourt, was convicted of aggravated rape, G. L. c. 265, § 22(a) (1984 ed.); kidnapping, G. L. c. 265, § 26 (1984 ed.); and assault by means of a dangerous weapon, G. L. c. 265, § 15B (1984 ed.). The defendant appealed his convictions to the Appeals Court, asserting that (1) the judge erred in denying his motion to suppress evidence obtained from him by a fellow inmate, while he was incarcerated for failure to post bail; (2) the judge erred in admitting evidence of a previous incident involving the defendant; (3) the judge erred in submitting to the jury prior to presentation of the defendant's case a letter written by the defendant; and (4) the judge erred in denying defense counsel's request for a presentence report. We transferred the case to this court on our own motion. We affirm.

We summarize the evidence.[1] On August 2, 1984, in the early morning hours, Donna Ceseretti and Rhonda Nardolillo left Route 95 at the West Exchange Street exit in Providence, Rhode Island. As they were stopped at a traffic light off the exit, a man, later identified as the defendant, attempted to unlock the door and to get into the automobile. The women pulled away, and the defendant was unsuccessful in his attempt to enter the automobile. The women filed a police report with the Providence police department.

Approximately a half hour later, the victim left the highway at the same place. As she waited at the red light, the defendant jumped into her automobile. The victim saw something slim and metal in the defendant's hand. The defendant told her that it was a knife.

---

[1] We relate additional facts in our discussion of the specific claims of error.

At the defendant's direction, the victim drove to Route 195 and followed that highway to Westport. In Westport, the defendant told the victim to leave the highway and to drive to a dimly lit street. The victim was fearful and pulled over in front of some hedges because lights were visible through the hedges. She flooded the engine so that they could not proceed any further down the dark road.

The defendant then forced the victim to perform oral sex on him. He then performed oral sex on the victim. In addition, he tried to force the victim to sit on the stick shift of the automobile. The defendant ordered the victim to lie across the seat, and he attempted to rape her. The defendant told the victim to get out of the automobile. Once outside, the defendant raped the victim.

The victim noticed a light turning on and off in the house behind the hedges. After the rape, as she began to get dressed, she asked the defendant to look under the automobile seat for her sneaker. While he looked, she ran toward the house. The owner of the house let her in and called the police.

The defendant, testifying on his own behalf, stated that after a night out in Providence, his automobile would not start. Trying to find a ride home to Fall River, he walked to West Exchange Street. He watched some automobiles go by, and he then approached one, with two women inside, to ask for cigarettes. The women pulled away.

The defendant later approached a second automobile, that of the victim. The defendant's testimony from this point corroborated much of the victim's testimony: he testified that he entered the automobile in Providence; that he told the woman to take Route 195; and that he told her to leave it at Westport, and to turn onto the dimly lit street. He also confirmed that they engaged in oral sex and sexual intercourse. However, he contended that the victim consented to the sexual activity.

1. *Motion to suppress evidence obtained from fellow inmate.* After his arrest, the defendant was incarcerated in lieu of bail. While incarcerated, he wrote a letter describing the incident to a fellow prisoner at the request of that prisoner. The defendant moved to suppress the letter. After making oral findings,

the judge denied the motion. The defendant argues it was error to deny his motion. He asserts that the letter was obtained from him "without [his] knowledge or consent by an inmate, acting as an agent of the Commonwealth." Such conduct, he asserts, violates his Fifth and Sixth Amendment rights.

The judge's oral findings are as follows. The defendant was placed in the New Bedford house of correction on August 3, 1984. A day or two later, he met another inmate, George Thompson. Thompson asked the defendant why he was there, and the defendant spoke freely with Thompson about his cases.[2] The defendant told Thompson that he raped the victim.

After these conversations, Thompson telephoned Massachusetts State Trooper Kenneth Candias, whom Thompson had known for seven to eight years. Thompson had provided Trooper Candias information from time to time. Thompson spoke to the trooper, and the trooper told him he would arrange a meeting between Thompson and the assistant district attorney handling the case against the defendant. The assistant district attorney arranged for Officer Russell Hauge of the Fall River police department and Officer John Gifford of the Westport police department to meet with Thompson at the house of correction.[3] Thompson told Officer Hauge what the defendant had said about the Westport case. Officer Hauge told Thompson

---

[2] The defendant also talked to Thompson about another rape case against him.

The defendant's motion requested that the letter be suppressed. At the hearing, defense counsel reasserted that he contested only the admissibility of the letter. After the judge's ruling on the motion to suppress defense counsel contested the admissibility of the oral statements. The judge found beyond a reasonable doubt that the statements were made voluntarily. Thompson clearly was not an agent when the defendant originally spoke to him, because Thompson had not yet spoken with law enforcement officials. There is no record support for a finding of involuntariness of the oral statements other than the defendant's claim of Thompson's status as a government agent. There was no error in admitting the oral statements. See, e.g., *Commonwealth* v. *Allen,* 395 Mass. 448, 453-455 (1985); *Commonwealth* v. *Paszko,* 391 Mass. 164, 176 (1984).

[3] Only Officer Hauge was admitted to the house of correction, apparently because the rules of the house of correction do not permit officers in uniform to speak with prisoners. Officer Gifford was in uniform.

that if he obtained any other information and wanted to relay that information, he should telephone or write to the district attorney's office.

After his discussion with Officer Hauge, Thompson sent a letter to the defendant via a system, devised by the two men, of bedsheets tied together which extended from Thompson's cell to the defendant's cell. In his letter, Thompson suggested to the defendant that he tell Thompson the details of the early morning of August 2 so that Thompson could assist him in contriving an alibi. The judge found that Thompson was trying to deceive the defendant into providing information. The defendant wrote a letter to Thompson detailing the incident. Later the defendant asked Thompson to return the letter, but Thompson told him that he had flushed it down the toilet. In fact, Thompson had forwarded the letter to the trooper.

Based on these facts, the judge found that, although Thompson hoped to gain favorable treatment for his information, he was not an agent of any law enforcement official. He further found that the defendant was not coerced into writing the letter.[4] The defendant argues that Thompson was an agent of the government when he requested and received the letter from the defendant.

The determination as to the relationship between the law enforcement officials and Thompson is a factual one, but "beyond this factual determination . . . is [the] legal question . . . whether the relationship or understanding as found by the [judge] is such that the informant's questioning has to be considered governmental interrogation for constitutional examination." *United States* v. *Surridge,* 687 F.2d 250, 252 (8th Cir.), cert. denied, 459 U.S. 1044 (1982). While we give substantial deference to the judge's ultimate findings, "we make our own

---

[4] The defendant at both the hearing and the trial claimed that Thompson coerced him by threatening to harm the defendant's pregnant girl friend. The defendant claimed that, as a result of the threats and coercion, he had no choice but to supply Thompson with the information. The judge disbelieved this testimony. The trial judge, not this court, has the function of determining the credibility of testimony. See *Commonwealth* v. *Fernette,* 398 Mass. 658, 663 n.9 (1986).

independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found. '" *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977), quoting *Brewer* v. *Williams,* 430 U.S. 387, 403 (1977).

Thompson's sentence was revised. He was released two and one-half months prior to the date originally scheduled for his release.[5] However, there is no evidence of any promises made to Thompson by law enforcement officials prior to Thompson's written communication with the defendant.[6] An individual's actions will not be attributed to the State if no promises are made for that individual's help and if nothing was offered to or asked of that individual. See *Thomas* v. *Cox,* 708 F.2d 132, 133 (4th Cir.), cert. denied, 464 U.S. 918 (1983); *United States* v. *Franklin,* 704 F.2d 1183, 1190 (10th Cir.), cert. denied, 464 U.S. 845 (1983). See also *United States* v. *Surridge, supra* at 254; *United States* v. *Van Scoy,* 654 F.2d 257, 261 (3d Cir.), cert. denied, 454 U.S. 1126 (1981). Simply because Thompson provided the letter "from an unencouraged hope to curry favor" does not characterize him as an agent of the government. *Thomas* v. *Cox, supra* at 136. The fact that Thompson later received a benefit from law enforcement officials "has little, if any, relevance to the question whether [he] was a government agent at the times he and the defendant [communicated]." *Commonwealth* v. *Rodwell,* 394 Mass. 694, 698 (1985). We conclude that the judge's findings in this case

---

[5] The record indicates that Thompson's parole eligibility was contingent on a warrant lodged against him for damage to a jail cell being nol prossed. The charge was nol prossed and the warrant withdrawn. The law enforcement officials said that they were not aware of the outstanding warrant until after Thompson turned the letter over to them. The judge's findings indicate that he believed the officers on this point because he found no promises were made to Thompson by any law enforcement official.

[6] Thompson testified at the hearing that he told the trooper that he was afraid to testify at the defendant's trial if he were still in prison. It appears from the record that Thompson told the trooper this after he had turned over the letter written by the defendant. Furthermore, the trooper did not respond at that point by offering to try to arrange an early release for Thompson. The record indicates that the release was arranged after the evidence was obtained and was intended to minimize the risks of having Thompson testify against a fellow inmate.

are supported by the evidence and that the judge's ruling that Thompson was not an agent therefore is not erroneous.[7]

2. *Evidence of the defendant's prior act.* The defendant asserts that the trial judge erred in admitting the testimony of his prior misconduct. He bases his argument on two grounds: (a) the evidence of the prior act was improperly admitted as character evidence showing the propensity of the defendant to commit criminal acts; and (b) the testimony of the witnesses who described the prior act contained improper identification evidence.

a. *The propensity theory.* The defendant did not object to the testimony of Donna Ceseretti, the first of the two women to testify about the incident that occurred approximately a half hour before the defendant entered the victim's car.[8]

Evidence of prior bad acts, while inadmissible for the purpose of proving bad character or a propensity to commit crimes, is admissible if relevant for some other purpose. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982); *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979); P.J. Liacos, Massachusetts Evidence 420-421 (5th ed. 1981). If "evidence is not too remote in time, or is connected with the facts of the case, it may be admitted to establish 'knowledge, intent, motive, method, material to proof of the crime charged.'" *Commonwealth* v. *Imbruglia, supra* at 695, quoting *Commonwealth* v. *Murphy,* 282 Mass. 593, 598 (1933). Evidence that the defendant attempted forcibly to enter an automobile in which

---

[7] The letter written by the defendant to Thompson is similar to the defendant's testimony in that it describes the victim's conduct as consensual. The only prejudicial portion of the letter is in the last page, where the defendant wrote, "I'm gonna tell the jury that when I got into the car that she asked me if I had money and I'm gonna tell them that she said later on to pay her if I didn't she would get me in trouble."

[8] Nor did the defendant object to the testimony of Rhonda Nardolillo, the second woman to testify as to the incident, on the ground that the testimony contained impermissible character evidence. He only moved to strike her testimony based on the fact that the identification was unreliable. See note 10, *infra.* The objecting party should "make[] known to the court the action which he desires the court to take or his objection to the action of the court." Mass. R. Crim. P. 22, 378 Mass. 892 (1979).

two women were riding shortly before he entered the victim's automobile tends to prove that at the time the defendant entered the victim's car, he did so by force. It also is relevant on the critical issues of intent, motive, and consent. There was no error. See *Commonwealth* v. *Harvey,* 397 Mass. 803, 809-810 (1986); *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979).[9]

b. *The identification testimony.* At trial the defendant made an opening immediately after the Commonwealth's opening. In his opening, he conceded the correctness of the defendant's identification and told the jurors that the defense was consent.[10] On appeal, the defendant makes an elaborate argument as to the identification of the defendant by the two witnesses whose automobile he first tried to enter. This he cannot do. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review. . . ." *Commonwealth* v. *Fernette,* 398 Mass. 658, 667 (1986), quoting *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). See *Commonwealth* v. *Lewis,* 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964).

---

[9] The defendant relies on *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. 465 (1985). In that case, the Appeals Court held that the admission of evidence that the defendant in a rape case had offered a ride to a young girl, who refused the ride, approximately twenty minutes before he offered a ride to the victim was error. In that case, the prior act provided no evidence of force. The defendant's attempt to enter forcibly the two women's automobile a half hour prior to the incident in the instant case bears on the issues of intent, the defendant's state of mind, and consent.

[10] Consistent with this trial strategy, the defendant did not object to the introduction of the photographic array that had been shown to the two women or to the identification of the defendant by one of the two women. Defense counsel moved to strike the identification of the second woman because she lacked an adequate opportunity to observe the defendant for identification purposes. The defendant's cross-examination of that witness exposed the defects in her opportunity to observe.

We note that the issue in identification cases is not whether "the witness was or might be mistaken but whether any possible mistake was or would be the product of improper suggestions made by the police." *Commonwealth* v. *Paszko,* 391 Mass. 164, 172 (1984), quoting *Commonwealth* v. *Gordon,* 6 Mass. App. Ct. 230, 237 (1978). There is no evidence of improper suggestions made by police in this record.

3. *The timing of the submission to the jury of the defendant's letter.* The defendant asserts that the submission of his letter to the jury prior to the presentation of his case placed undue emphasis on the exhibit and thus was an abuse of discretion by the judge.[11] We do not agree.

"The order of the presentation of evidence is within the sound discretion of the trial judge." *Boyd* v. *Lawrence Redevelopment Auth.,* 348 Mass. 83, 84 (1964). See *Commonwealth* v. *Flynn,* 362 Mass. 455, 468 (1972). A "judge has broad discretion in determining the method by which evidence is brought to the jury's attention." *Commonwealth* v. *Amazeen,* 375 Mass. 73, 84 (1978). The judge reasonably could conclude that the most efficient use of courtroom time was to submit the letter to the jurors as he did. There was no error.

4. *The denial of defense counsel's request for a presentence report.* The defendant asserts that the denial of his request for a presentence report violated Mass. R. Crim. P. 28 (b), (d) (2), 378 Mass. 898 (1979), and his due process rights.

After the jury returned its verdicts, the prosecutor moved for sentencing. Defense counsel requested that the case be continued to allow time for the probation department to prepare a presentence report. The judge denied this request but gave defense counsel an opportunity to present mitigating factors orally, which defense counsel did. Defense counsel argued that the defendant graduated from high school, had worked for the five years prior to his arrest at a furniture store in Fall River, had never served any time in prison, and is the father of a baby boy.

Massachusetts Rule of Criminal Procedure 28 (b) provides that "[b]efore imposing sentence the court shall afford the defendant or his counsel an opportunity to speak on behalf of the defendant and to present any information in mitigation of punishment." The judge in this case did adhere to the rule, allowing defense counsel to present mitigating factors. The

---

[11] The judge carefully instructed the jurors in substance that he did not want them to feel "pressured" while reading the letter and that they should not attach any significance to the manner in which this exhibit was presented to them.

defendant's lack of a prison record was made clear. Thus, there was no violation of the rule or its underlying policy. Moreover, because counsel had the opportunity to speak on behalf of the defendant, the defendant's right of allocution — the right to present mitigating factors prior to sentencing — was not violated by the denial of a continuance for preparation of a presentence report. See *Commonwealth* v. *Rosadilla-Gonzalez,* 20 Mass. App. Ct. 407, 414 (1985). See generally *Hill* v. *United States,* 368 U.S. 424, 428 (1962); *Ashe* v. *North Carolina,* 586 F.2d 334 (4th Cir. 1978), cert. denied, 441 U.S. 966 (1979); *United States* v. *Leavitt,* 478 F.2d 1101, 1104 (1st Cir. 1973).

*Judgments affirmed.*