COMMONWEALTH *vs.* JAMIE P. BERENDSON.

No. 07-P-1129.

Berkshire. September 18, 2008. - December 19, 2008.

Present: CYPHER, GRASSO, & KANTROWITZ, JJ.

*Assault with Intent to Rape. Evidence,* Prior misconduct. *Practice, Criminal,* Argument by prosecutor.

At the trial of indictments arising from two separate incidents occurring on the same day but involving two different victims, the judge did not err in denying the defendant's motion for a required finding of not guilty on an indictment charging assault with intent to rape the second victim, where the evidence of the rape of the victim of the first incident, in conjunction with the evidence of the interrupted assault of the victim of the second incident, indicated a distinctive pattern of conduct on the part of the defendant and supported the Commonwealth's theory that the defendant had intended to rape the second victim. [397-399]

At a criminal trial, no error arose from a statement in the prosecutor's closing argument that described rape as a crime of violence and not sexual pleasure, where the statement was grounded on common knowledge, not expertise, and did not require supporting expert testimony, and where the judge correctly instructed the jury on their consideration of remarks made in closing arguments. [399-400]

INDICTMENTS found and returned in the Superior Court Department on October 16, 2002.

The cases were tried before *John A. Agostini*, J.

*David M. Skeels*, Committee for Public Counsel Services, for the defendant.

*James Petersen*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant, Jamie P. Berendson, was convicted of two counts of unarmed robbery, G. L. c. 265, § 19B; aggravated rape, G. L. c. 265, § 22; kidnapping, G. L. c. 265, § 26; and assault and battery. The defendant was also convicted of assault with intent to rob, G. L. c. 265, § 20; assault with intent to rape, G. L. c. 265, § 24; and assault and battery aris-

ing from a separate incident involving a different victim that occurred on the same day.

On appeal, the defendant argues that (1) his motion for a required finding of not guilty on the charge of assault with intent to rape should have been allowed; (2) the trial judge committed reversible error because he prevented the defendant from cross-examining one of the victims to determine whether she had taken her prescribed methadone medication; and (3) the prosecutor's argument that rape is a crime of violence and not sexual pleasure was impermissible and not based on expert testimony. We affirm.

*Facts.* The convictions arose from two separate incidents on the same day, first at Cumberland Farms in Pittsfield and later at the Lipton Mart in Lee. A lone female clerk at each store was assaulted during the respective events.

The evidence presented at trial showed that the defendant entered the Pittsfield Cumberland Farms around 4:30 A.M. on September 22, 2002. After using the restroom, the defendant left the store, returning a short while later through a back door to wait for the victim in the back room. The victim testified at trial that she heard a noise in the back of the store and went to investigate. When she walked into the back hallway, she testified that the defendant attacked her, choked her until she became unconscious, locked her in the store bathroom, and then beat and sexually assaulted her. A surveillance videotape from Cumberland Farms presented at trial shows, in part, the defendant entering the camera's view from the rear of the store, briefly interacting with a female patron,[1] and then returning toward the rear of the store and out of view, where he was again alone with the victim in the bathroom. The videotape then shows the defendant returning to the register, emptying the cash, and leaving the store with the victim's pocketbook shortly after 5:00 A.M. Police officers testified that when they arrived on the scene, the victim's pants were undone and she appeared to be in shock.[2]

The second victim testified that the defendant entered the

---

[1]While the defendant had the victim in the bathroom, a female patron, Linda Merry, came into the store. The surveillance videotape shows the defendant coming back into view and interacting with Merry. The victim heard the defendant tell Merry that the manager of the store had called and told him to close the store. (Merry testified to this as well.) Merry then left.

[2]To the limited extent to which the defendant claims insufficiency of the

Lipton Mart in Lee roughly twelve hours following the Cumberland Farms incident and remained there for about an hour as he bought gasoline, filled out an employment application using a false name, and talked with the clerk. The defendant then left. The victim testified that a few hours later, at about 10:30 P.M., she was ambushed by the defendant as she was wringing out a mop in the rear of the store. As the defendant choked her and pulled her to the ground, the victim grabbed the alarm which alerted the police. When she informed the defendant that the police were on their way, he immediately let her go and ran out of the store.

In his testimony at trial, the defendant conceded that he had robbed or attempted to rob both convenience stores. He admitted to choking and beating the Pittsfield victim but denied that he sexually assaulted or intended to sexually assault either victim.

*Assault with intent to rape.* The defendant first argues that his motion for a required finding on the charge of assault with intent to rape the Lee victim should have been allowed because the evidence, even including evidence that the defendant raped the Pittsfield victim, was insufficient to prove that he intended to rape the Lee victim. In considering such an argument, the court must examine the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

The essential elements of the crime of assault with intent to rape are "(1) an assault upon the victim, and (2) a specific intent by the defendant at the time of the assault to rape the victim." *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 427 (1987), quoting from *Commonwealth* v. *Nickerson*, 388 Mass. 246, 253 (1983). See G. L. c. 265, § 24.

To establish specific criminal intent, the Commonwealth may rely wholly on circumstantial evidence. *Commonwealth* v. *Degro*, 432 Mass. 319, 325 (2000). The inferences drawn need only be "reasonable and possible." *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 198-199 (2006), quoting from *Commonwealth* v.

evidence to warrant a finding of rape involving the Pittsfield victim, the claim is meritless.

*Longo*, 402 Mass. 482, 487 (1988). In *Commonwealth* v. *Martin*, 447 Mass. 274, 291 (2006), the Supreme Judicial Court concluded that an attack on a teenage girl coupled with violent sexual notes found on the defendant at the time of his arrest were sufficient evidence to support the defendant's conviction of assault with intent to rape. While there was no evidence that the victim was actually touched in a sexual manner, the testimony of witnesses who observed the defendant grab the victim from behind and drag her off a beach path, and the discovery of sexually explicit notes on the defendant's person, allowed the jury to reasonably infer that the attack was sexual in nature. *Ibid.* Similarly, in the instant case, the Commonwealth relied on evidence of the prior rape of the Pittsfield victim, coupled with evidence of the interrupted assault of the Lee victim, to support its theory that the defendant intended to rape the Lee victim.[3]

It is well settled that while the prosecution may not rely on evidence of prior "bad acts" for the purposes of showing the defendant's bad character or propensity to commit the crime charged, such evidence may be admissible for some other purpose. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). For example, such evidence may be admissible to show a "common scheme, pattern of operation, . . . intent, or motive." *Ibid.* In *Helfant*, the defendant appealed from convictions of rape and drugging a person for unlawful sexual intercourse. *Id.* at 215. The trial judge allowed testimony from previous patients of the defendant who allegedly were offered the same drug as the victim in *Helfant* prior to having been sexually assaulted. *Id.* at 224. The evidence was admissible to show "the existence of a plan or scheme or state of mind on the part of the defendant" in order to prove an "intent to stupefy or overpower [the complain-

---

[3]The docket entries indicate that the defendant moved to sever the trial of the indictments relating to the Pittsfield crimes from the trial on the indictments relating to the Lee crimes. The judge denied the motion, and it was well within his discretion to do so. See, e.g., *Commonwealth* v. *Pillai*, 445 Mass. 175, 181 (2005). On appeal, the defendant raises no issue pertaining to the denial of his motion to sever.

A decision on a motion to sever may "turn, in large measure, on whether evidence of the other offenses would be admissible at separate trials on each indictment." Smith, Criminal Practice and Procedure § 20.24 (3d ed. 2007). Here, the evidence would have been so admissible, and the defendant does not contend otherwise.

ant]" with drugs, an essential element of the crime. *Id.* at 219, 226. Similarly, in *Commonwealth* v. *Rancourt*, 399 Mass. 269, 276 (1987), the Supreme Judicial Court upheld the admission of a prior act in which the defendant attempted, and failed, to forcibly enter a car in which two women were riding shortly before he entered the rape victim's car. The evidence was admissible because "[t]he defendant's attempt to enter forcibly the two women's automobile a half hour prior to the incident . . . bears on the issues of intent, the defendant's state of mind, and consent." *Id.* at 276 n.9.

Based on the totality of evidence, we agree with the trial judge that the similar behavior of the defendant prior to and during each incident allowed the jury to reasonably infer the defendant intended to rape the Lee victim. In both instances the defendant selected convenience stores with lone, female clerks. Prior to each assault, the defendant examined the layout of the store before returning to commit the crime. Each time, the defendant hid in the back of the store, away from the register, waiting for the victim to leave the view of customers and surveillance. Each assault began with the defendant placing the victim in a choke hold. The two attacks were virtually identical and only seventeen hours apart. The defendant had ample opportunity to immediately demand cash from the register when the store had no customers and the clerk was alone at the counter, but he instead hid and waited in the rear of the store, away from the cash register. The Lee assault only ended because the victim was able to pull the alarm. The evidence supports the existence of a "distinctive pattern of conduct" where the defendant investigated, isolated, and then sexually attacked his victims. See *Commonwealth* v. *Helfant*, 398 Mass. at 227.

*Rape as a crime of violence.* The defendant claims that the prosecutor's closing argument, in which rape was described as a crime of violence and degradation, not a crime of sexual pleasure, was not based on expert evidence in the record, and the trial judge committed prejudicial error in overruling the defendant's objection to the argument.

A review of closing remarks must be made in the context of the entire closing argument, the judge's instructions to the jury, and the evidence produced at trial. *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998). Expert testimony is required when

the testimony concerns matters beyond the common knowledge of the jurors and will aid jurors in reaching a decision. *Commonwealth* v. *Frangipane*, 433 Mass. 527, 533 (2001). A prosecutor may not ask a jury to draw inferences requiring expert testimony that is not in the record. *Commonwealth* v. *Beaudry*, 445 Mass. 577, 584 (2005).

Contrary to the defendant's arguments, the violent, degrading nature of rape is commonly understood by the public and does not require expert testimony. Rape has long been recognized as a crime of violence. See *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931) (rape's "essence is the felonious and violent penetration of the [victim] by the defendant"); *Commonwealth* v. *Young*, 401 Mass. 390, 398 n.8 (1987) (rape is "a major crime of violence"); *Commonwealth* v. *Caracciola*, 409 Mass. 648, 652 (1991) ("robbery and rape are both crimes of violence"); *Commonwealth* v. *McCourt*, 438 Mass. 486, 495 (2003) (rape is "a crime involving not simply sex but violence and domination calculated to humiliate, injure and degrade" [citations omitted]). The prosecutor's observation was grounded on common knowledge, not expertise, and did not require supporting expert testimony. See *Commonwealth* v. *Oliveira*, 431 Mass. 609, 613 (2000) (rejecting defendant's claim that expert testimony was needed to support prosecutor's closing argument that there are reasons why women often remain in relationships with abusive men).

Additionally, the trial judge instructed the jury in both his opening and closing remarks that closing arguments are not evidence. The trial judge also warned the jury to rely strictly on the evidence presented at trial, and not personal opinions or emotion heard in the closing argument. There was no error.[4]

*Judgments affirmed.*

---

[4]The defendant's claim that the trial judge committed reversible error when he prevented the defense from cross-examining the Pittsfield victim to determine whether she had taken methadone on the day of the alleged rape and whether this affected her ability to perceive, remember, and relate what had happened, is also without merit. Our reading of the transcript indicates that the jury learned that the victim was "on methadone." As a result of the Commonwealth's objection to a question concerning the number of years the victim had been on methadone, the trial judge, at sidebar, indicated that counsel could "[a]sk [the Pittsfield victim] if she was on any drug or under the influence of anything at the time she was in the store." Counsel chose not to ask that question.