NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12907

COMMONWEALTH  vs.  CLIFTON CALDWELL.


Plymouth.     December 2, 2020. - May 6, 2021.

Present:  Budd, C.J., Lowy, Cypher, & Kafker, JJ.


Rape.  Evidence, Disclosure of evidence, Exculpatory,
    Credibility of witness.  Witness, Credibility.  Practice,
    Criminal, Disclosure of evidence, New trial.



Indictment found and returned in the Superior Court
Department on March 10, 2000.

A motion for a new trial, filed on March 22, 2018, was
heard by Angel Kelley, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Lisa M. Kavanaugh, Committee for Public Counsel Services,
for the defendant.
Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.
Karen A. Newirth, of New York, Radha Natarajan, Debra
Loevy, & Robert M. Bloom, for Exoneration Project & others,
amici curiae, submitted a brief.


BUDD, C.J.  The defendant, Clifton Caldwell, appeals from a

Superior Court judge's denial of his motion for a new trial on

an indictment for aggravated rape of which he was convicted in 2002.  Among other arguments, the defendant contends that his motion should have been granted because his defense was prejudiced by the Commonwealth's failure to disclose exculpatory evidence concerning a key witness -- the defendant's former cellmate, who testified at trial that the defendant had confessed his participation in the charged offense.  We agree, and therefore conclude that the defendant is entitled to a new trial.[1]

Factual background.  We summarize the relevant facts as found by the motion judge, supplemented with evidence from the records of the motion hearing and trial.  In 1999, the defendant's niece (victim) alleged that eight years earlier, when she was four years old, she had been raped by her father with the assistance of his two brothers, one of whom was the defendant.  All three brothers subsequently were indicted for aggravated rape of a child under the age of fourteen years.

Several days before the defendant's trial in December 2002, the Commonwealth informed the judge that it intended to present testimony from a witness as to statements that the defendant had made when the witness and the defendant were being held together

---

[1] We acknowledge the amicus brief submitted by the Exoneration Project, the New England Innocence Project, and Robert M. Bloom.

in a house of correction.  At that time, the Commonwealth also moved to sever the defendant's trial from that of his two brothers.  See Bruton v. United States, 391 U.S. 123, 126 (1968) (admission of codefendant's confession in joint trial violates defendant's right to confront and cross-examine witnesses under Sixth Amendment to United States Constitution).  The defendant's brothers thereafter were tried together and were acquitted.

Prior to trial, the defendant's trial counsel had requested the witness's criminal record and filed a motion seeking information concerning any threats, rewards, inducements, or promises made to the witness, but received no response prior to the start of the trial.  On the first day of jury selection, the prosecutor disclosed at sidebar that although the witness "might have" requested favorable treatment in connection with his testimony, there had been no offers of rewards, promises, or inducements to the witness.  The Commonwealth also disclosed that the witness's father had raped his sister, his girlfriend was a victim of sexual abuse, and the witness had no sympathy for rapists.  Trial counsel also had access to a police report from 2000, which stated only that the witness had cooperated with police in the past.

At the defendant's trial, the victim testified that her father had sexually assaulted her several times in 1991, including one incident when her father vaginally penetrated her

while the defendant held her arms and her other uncle held her legs.  During her testimony the victim admitted that, in 1999, after having accused her father and uncles of rape, she falsely accused one of the two uncles (the defendant's brother) of physically assaulting her on a separate occasion, and that she had falsely testified under oath in her uncle's ensuing criminal trial that he had assaulted her.

The Commonwealth also presented testimony from the witness who had been held in custody with the defendant at a house of correction.  This witness testified that while he was serving a sentence for violation of probation, he had been held in a two-man cell with the defendant in November or December of 1999. According to the witness, the defendant said that he should not be in prison because "all he did was hold his niece's arms down" when his brothers penetrated the victim.  The witness further testified that despite the stigma against "snitches" in prison, he spoke to police about the defendant's confession because "someone who commits an act like this doesn't deserve to be on the street."  He also testified that he had not been offered any rewards or promises of leniency in exchange for his testimony, and that there was "nothing in it" for him.

On cross-examination, the witness admitted that he hated rapists and had a bias against them, and that once he learned of the rape charge against the defendant, he attempted to extract a

confession from the defendant.  The witness denied asking anyone
from the Commonwealth about getting preferential treatment, such
as receiving early probation or having pending criminal charges
against him dropped.  A detective who interviewed the witness
about his conversations with the defendant also testified that
the witness did not request leniency and that she did not offer
him any inducements.

The defendant was found guilty and sentenced to from
twenty-seven to thirty-five years in prison.

Motion for a new trial.  In 2018, the defendant filed his
third motion for a new trial.[2]  At the evidentiary hearing,
defense counsel presented testimony that the witness had been a
long-time police informant who had received unusually lenient
sentences for previous crimes.[3]  In connection with testimony
from an investigator, defense counsel introduced a handwritten
note that the trial prosecutor had created during a pretrial
meeting with the witness, which stated:

> "[witness's name]
> -- met all 3 in Plymouth holding
> -- [name of State police trooper] -- called
> -- testified for Comm before in Bristol --
>    got kid to write down what happened"

---

[2] The defendant had filed motions for a new trial in 2004
and 2007.  Both were denied by the trial judge, and on appeal
the denials were affirmed by the Appeals Court.

[3] The witness died in 2016.

This note had been produced posttrial by the Commonwealth in response to court-ordered discovery requested by the defendant.

The investigator opined -- and the motion judge agreed -- that the last two lines of this note referred to the witness's involvement in the 1985 prosecution case of Michael Rancourt for rape. See Commonwealth v. Rancourt, 399 Mass. 269 (1987). In that case, the same cellmate-witness who testified against the defendant in the instant case had met Rancourt in a house of correction. Id. at 272. Rancourt spoke freely about the charges pending against him and admitted that he had raped the victim in that case. Id. The witness then spoke with an officer to whom he previously had provided information, and the officer told the witness that he would arrange a meeting with the prosecutor handling Rancourt's case. Id. Thereafter, the witness sent Rancourt an internal prison letter imploring Rancourt to tell him the details of the rape so that he could help Rancourt create an alibi. Id. at 273. Rancourt sent the witness a letter detailing the rape, and the witness turned the letter over to police. Id. The witness later was granted early release from incarceration to minimize the risks of testifying against a fellow inmate. Id. at 274 & n.6.

Rancourt moved to suppress the letter he wrote, arguing that the witness was an agent of the Commonwealth. Id. at 271-272. The judge disagreed, finding that although the witness

hoped to gain favorable treatment, he did not coerce Rancourt into writing the letter and did not act as an agent of the Commonwealth. Id. at 273. We upheld that ruling on appeal. Id. at 274-275.

At the hearing in the present case, the defendant's trial counsel testified that he had been unaware of the witness's involvement in the Rancourt case and thus had not cross-examined the witness about it. The motion judge nevertheless denied the defendant's motion for a new trial, finding that the defendant had established neither that the witness was a long-time police informant nor that, as a result, he received lenient treatment. The judge also found that there was no credible evidence that there was a correlation between the witness's cooperation with police in the defendant's case[4] and the final disposition of the cases the witness had pending at the time of his cooperation. Finally, the judge noted that defense counsel cross-examined the witness concerning whether he had asked for preferential treatment with regard to his then-pending cases. The judge concluded that the failure[5] or inability to impeach the witness

---

[4] The judge found that the witness did not receive any reduction in his sentence or favorable treatment for any other criminal charges for cooperating with police in the defendant's case.

[5] The motion judge also concluded that the resolution of the witness's prior cases and his involvement in the Rancourt case were not newly discovered evidence, as they reasonably were

regarding his involvement in the Rancourt case, or with other alleged instances of the witness's cooperation with the government,[6] did not merit a new trial.

The defendant appealed, and we granted his application for direct appellate review.

Discussion. As a general matter, we review a judge's denial of a defendant's motion for a new trial to determine whether there has been a significant error of law or other abuse of discretion. Commonwealth v. Sullivan, 478 Mass. 369, 380 (2017). Where, as here, the motion judge was not the trial judge, we accept findings made by the judge based on testimony at the evidentiary hearing, and do not disturb them unless they clearly are erroneous. Commonwealth v. Drayton, 479 Mass. 479, 486 (2018). However, we review independently findings made by the motion judge based entirely on documentary evidence. Id. Further, we "make an independent determination as to the correctness of the judge's application of constitutional

---

discoverable through due diligence at the time of trial, and that defense counsel's failure to impeach the witness with this evidence did not deprive the defendant of an otherwise available substantial ground of defense.

[6] At the hearing, the defendant presented testimony that the witness's lengthy criminal history report showed an "unusually lenient" string of guilty filed dispositions and suspended sentences, and that a retired State police trooper had identified the witness as one of his "snitches."

principles to the facts as found."  Commonwealth v. Tremblay,
460 Mass. 199, 205 (2011).

In criminal prosecutions, the government constitutionally
is obligated to disclose material exculpatory evidence, even if
it is not requested by the defendant.  Sullivan, 478 Mass. at
380, citing United States v. Agurs, 427 U.S. 97, 107 (1976).
See Mass. R. Crim. P. 14 (a) (1) (A) (iii), as amended, 444
Mass. 1501 (2005); Mass. R. Prof. C. 3.8 (d), as appearing in
473 Mass. 1301 (2016).[7]  Where the government fails to comply
with this duty to turn over exculpatory evidence to the defense,
a convicted defendant may be entitled to a new trial.  "To
obtain a new trial on the basis of nondisclosed exculpatory
evidence, a defendant must establish (1) that 'the evidence
[was] in the possession, custody, or control of the prosecutor
or a person subject to the prosecutor's control,' (2) 'that the
evidence is exculpatory,' and (3) 'prejudice.'"  Sullivan,
supra, quoting Commonwealth v. Murray, 461 Mass. 10, 19, 21
(2011).

---

[7] The prosecution's constitutional obligation to disclose
exculpatory evidence to the defendant, and our related
procedural and ethical rules embodying that obligation, were all
in effect before this case was tried in 2002.  See Commonwealth
v. Tucceri, 412 Mass. 401, 404-405 (1992); Mass. R. Crim. P. 14
(a) (1) (C), 378 Mass. 874 (1979); Mass. R. Prof. C. 3.8 (d),
426 Mass. 1397 (1998).

Here, it is undisputed that the nondisclosed evidence was in the possession of the prosecutor at the time of trial because it consisted of the prosecutor's own notations concerning the witness.  We therefore turn to the question whether the note was exculpatory and, if so, whether the defendant was prejudiced by the nondisclosure of that evidence.

1.  Whether the undisclosed evidence was exculpatory. "Evidence is exculpatory if it 'provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness.'"  Commonwealth v. Watkins, 473 Mass. 222, 231 (2015), quoting Commonwealth v. Daniels, 445 Mass. 392, 401-402 (2005).

Here, the prosecutor's note indicated that the witness had testified about a jailhouse confession extracted from a then-fellow inmate in a previous case.  Further investigation of the case referenced in the note likely would have led defense counsel to discover the witness's significant role in the prosecution of Rancourt.  See Rancourt, 399 Mass. 269.  While the two men were in custody in a house of correction, Rancourt told the witness that he was being detained because he had raped a woman.  The witness contacted a State police trooper to whom he supplied information from time to time relaying the substance

of his conversation with Rancourt. The witness thereafter extracted a written confession from Rancourt, which the witness shared with the trooper. Id. at 272-273. The judge who heard Rancourt's motion to suppress found that the witness had hoped to gain favorable treatment in exchange for the information that he had provided to the trooper. Id. at 273. After providing the information, the witness's sentence was revised and he was released two and one-half months before his previously scheduled release date as a protective measure, although there was no evidence that law enforcement officers made any promises to the witness. Id. at 274 & n.6.

If the defendant's trial counsel had known about the witness's previous involvement in the Rancourt case, he could have used it to challenge the witness's claim that he had broken the jailhouse "code of silence" to testify against the defendant with no expectation of any benefit for himself. Defense counsel could have argued that the witness once again was motivated by a desire to secure favorable treatment in his pending cases.[8] See Commonwealth v. Birks, 435 Mass. 782, 787 n.4 (2002), S.C., 484 Mass. 1014 (2020) (witnesses' subjective hopes and expectations

---

[8] The witness had open cases against him when he first approached law enforcement about the defendant in January 2000, when he testified before the grand jury in March 2000, and when he testified at trial in December 2002. The witness faced different open charges at each stage of his cooperation with law enforcement in the defendant's case.

that their testimony might benefit them in disposition of their own cases "are obviously relevant to the questions of bias and motivation and are also fair game for cross-examination"). Additionally, defense counsel might have used the witness's involvement in the Rancourt case, which also involved a rape charge, to bolster the defense theory that the witness was so biased against individuals accused of rape that he would go to any lengths to convict them.

Thus, the prosecutor's note was exculpatory in that it could have led to evidence that would have called into question the witness's credibility.  See generally Murray, 461 Mass. at 19, quoting Commonwealth v. Healy, 438 Mass. 672, 679 (2003) ("'Exculpatory' in this context is not a narrow term connoting alibi or other complete proof of innocence, . . . but rather comprehends all evidence 'which tends to negate the guilt of the accused . . . or, stated affirmatively, supporting the innocence of the defendant'" [quotations omitted]).

2.  Whether nondisclosure of the note was prejudicial.  We now turn to the question whether nondisclosure of the prosecutor's note prejudiced the defendant's defense.  In assessing the prejudicial impact of undisclosed exculpatory evidence, we have applied two different standards depending on whether the evidence was subject to a specific discovery request by the defendant.  Where the exculpatory evidence at issue has

been requested specifically, "a defendant need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure." Commonwealth v. Tucceri, 412 Mass. 401, 412 (1992). Alternatively, where the defendant has made no request, or only a general request for exculpatory evidence, we ask "whether there is a substantial risk that the jury would have reached a different conclusion" if the evidence had been disclosed, or, in other words, "[w]ould it have been a real factor in the jury's deliberations?" Id. at 413. Here, we apply the second standard because the defendant did not make a specific discovery request that encompassed the prosecutor's note.[9] But even under this more stringent standard, we conclude that the defendant was prejudiced by the nondisclosure of this note.

---

[9] To be considered specific, a request must "provide the Commonwealth with notice of the defendant['s] interest in a particular piece of evidence." Commonwealth v. Gallarelli, 399 Mass. 17, 22 (1987), quoting Commonwealth v. Jackson, 388 Mass. 98, 110 (1983). In arguing that he made such a specific request, the defendant cites his pretrial discovery requests for the witness's probation record and for information concerning any threats, rewards, inducements, or promises made to the witness, but the prosecutor's note does not fall within any of the categories of information sought by the defendant. Further, because this case was indicted and tried prior to the amendment of Mass. R. Crim. P. 14 in 2004, the defendant was not entitled to rely on the automatic discovery obligations currently imposed on the prosecution in Mass. R. Crim. P. 14 (a) (1) (A) (i), (ii), & (iv)-(ix), to give the prosecution notice of a specific interest in the prosecutor's note. Compare Commonwealth v. Rodriguez-Nieves, 487 Mass. 171, 179 n.12 (2021).

As the motion judge recognized, the witness was "critical" to the case against the defendant "because [the victim] suffered from credibility problems arising from the delay in disclosure and her admitted perjury against [her uncle] in another case." The witness provided essential corroboration for the victim's testimony, without which the jury might not have convicted the defendant.  Significantly, as mentioned supra, in the separate joint trial of the defendant's brothers, at which the witness did not testify, both brothers were acquitted.

Disclosure of the prosecutor's note, which referenced the witness's role in a separate prosecution, would have provided the defendant with the strongest available basis for impeaching the credibility of this critical witness.  As we have explained supra, the fact that the witness had hoped to gain favorable treatment for his testimony in Rancourt; that he ultimately received a shortened sentence after testifying in that case; and that he had previously shared information with a State police trooper from time to time, could have been used to contradict the witness's testimony about his purported general reluctance to snitch and his representation that he had come forward in the present case only because of his dislike for rapists, without any expectation of personal benefit.

For these reasons, we reject the Commonwealth's contention that the information revealed by the prosecutor's note is merely

cumulative because the Commonwealth had turned over the police report that noted the witness's previous cooperation with law enforcement, about which defense counsel did not question the witness at trial. The specific facts relating to the witness's cooperation in Rancourt, including his hope for favorable treatment and the reduction of his sentence, would have made that evidence far more compelling for a jury than the generic reference to the witness's prior police cooperation contained in the police report.

We are unpersuaded that the potential force of evidence concerning the witness's role in Rancourt would have been blunted because the witness had not been promised anything in exchange for his testimony in that case. Regardless of whether he had been offered any inducements, the witness's subjective hope for favorable treatment for assisting the prosecution in Rancourt, and the fact that his sentence was revised after he provided information to the police, could have provided an effective basis for cross-examining him regarding his motive for testifying at the defendant's trial.[10] See Commonwealth v.

---

[10] For this reason, we reject the conclusion that disclosure of the witness's role in Rancourt might have worked to the defendant's disadvantage because it would have enhanced the witness's credibility regarding his professed dislike of rapists. Indeed, evidence that the witness may have hoped to benefit from his testimony in this case as he had in the Rancourt case would have given the jury a reason to question the witness's purported altruism.

Henson, 394 Mass. 584, 587 (1985) ("The possibility that a prosecution witness is hoping for favorable treatment on a pending criminal charge is sufficient to justify inquiry concerning bias, even if the Commonwealth has offered no inducements to the witness"). We further note that our conclusion in Rancourt that the witness was not acting as an agent of law enforcement when he induced Rancourt to commit his confession to writing has limited relevance, if any, to whether the witness's testimony was motivated by self-interest.

Conclusion. Because the witness's testimony was critical to the Commonwealth's case against the defendant, and because evidence of the witness's prior cooperation with law enforcement in the Rancourt case, as revealed by the prosecutor's note, would have provided the strongest available basis for impeaching the witness's credibility, we conclude that evidence of the witness's role in Rancourt would have been a real factor in the jury's deliberations at the defendant's trial. See Tucceri, 412 Mass. at 414 ("If . . . the undisclosed evidence is more credible than any other evidence on the same factual issue and bears directly on a crucial issue before the jury, such as the credibility of an important prosecution witness, that evidence would have been a real factor in the jury's deliberations . . ."). The defendant was therefore prejudiced by the

nondisclosure of the prosecutor's note and is accordingly entitled to a new trial.[11,12]

The order denying the defendant's motion for a new trial is reversed.  The defendant's conviction of aggravated rape is vacated, the verdict is set aside, and the case is remanded to the Superior Court for a new trial.

So ordered.

---

[11] Although newly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis for granting a new trial, see Commonwealth v. Drayton, 479 Mass. 479, 490 (2018), the situation is different where the Commonwealth's case depends heavily on the testimony of a particular witness and new evidence seriously undermines the credibility of that witness, see Commonwealth v. Cowels, 470 Mass. 607, 621 (2015).

[12] As we conclude that the defendant is entitled to a new trial based on the Commonwealth's failure to disclose exculpatory evidence, we need not consider the defendant's claim that he was deprived of effective assistance of counsel because of trial counsel's failure to (1) discover and investigate the key witness's full criminal record and history as a police informant, and (2) present expert testimony to explain the phenomenon of false memories.